SMITH *v.* ALLWRIGHT, ELECTION JUDGE, ET AL.

No. 51. Argued November 10, 12, 1943. Reargued January 12, 1944.—Decided April 3, 1944.

.

*Messrs. Thurgood Marshall* and *William H. Hastie,* with whom *Messrs. Leon A. Ransom, Carter Wesley, W. J. Durham, W. Robert Ming, Jr.,* and *George M. Johnson* were on the brief, for petitioner.

No appearance for respondents.

By special leave of Court, *Mr. George W. Barcus,* Assistant Attorney General of Texas, with whom *Mr. Gerald C. Mann,* Attorney General, was on the brief for the Attorney General of Texas, as *amicus curiae,* urging affirmance. Briefs of *amici curiae* were filed by *Mr. Wright Morrow* on behalf of Mr. George A. Butler, Chairman of the State Democratic Executive Committee of Texas, urging affirmance; and by *Mr. Whitney North Seymour* on behalf of the American Civil Liberties Union, by *Mr. Osmond K. Fraenkel* on behalf of the Committee on Constitutional Liberties, National Lawyers Guild, and by *Mr. John F. Finerty* on behalf of the Workers Defense League,—urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

This writ of certiorari brings here for review a claim for damages in the sum of $5,000 on the part of petitioner, a Negro citizen of the 48th precinct of Harris County, Texas,

for the refusal of respondents, election and associate election judges respectively of that precinct, to give petitioner a ballot or to permit him to cast a ballot in the primary election of July 27, 1940, for the nomination of Democratic candidates for the United States Senate and House of Representatives, and Governor and other state officers. The refusal is alleged to have been solely because of the race and color of the proposed voter.

The actions of respondents are said to violate §§ 31 and 43 of Title 8 [1] of the United States Code in that petitioner was deprived of rights secured by §§ 2 and 4 of Article I [2] and the Fourteenth, Fifteenth and Seventeenth Amend-

---

[1] 8 U. S. C. § 31:

"All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding."

§ 43: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] Constitution, Art. I:

"Section 2. The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."

"Section 4. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

ments to the United States Constitution.[3]  The suit was filed in the District Court of the United States for the Southern District of Texas, which had jurisdiction under Judicial Code § 24, subsection 14.[4]

The District Court denied the relief sought and the Circuit Court of Appeals quite properly affirmed its action on the authority of *Grovey* v. *Townsend,* 295 U. S. 45.[5] We granted the petition for certiorari to resolve a claimed inconsistency between the decision in the *Grovey* case and that of *United States* v. *Classic,* 313 U. S. 299. 319 U. S. 738.

The State of Texas by its Constitution and statutes provides that every person, if certain other requirements are met which are not here in issue, qualified by residence

---

[3] Constitution:

Article XIV. "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article XV. "Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

"Section 2. The Congress shall have power to enforce this article by appropriate legislation."

Article XVII. "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures."

[4] A declaratory judgment also was sought as to the constitutionality of the denial of the ballot. The judgment entered declared the denial was constitutional. This phase of the case is not considered further as the decision on the merits determines the legality of the action of the respondents.

[5] *Smith* v. *Allwright,* 131 F. 2d 593.

in the district or county "shall be deemed a qualified elector." Constitution of Texas, Article VI, § 2; Vernon's Civil Statutes (1939 ed.), Article 2955. Primary elections for United States Senators, Congressmen and state officers are provided for by Chapters Twelve and Thirteen of the statutes. Under these chapters, the Democratic party was required to hold the primary which was the occasion of the alleged wrong to petitioner. A summary of the state statutes regulating primaries appears in the footnote.[6] These nominations are to be made by the qualified voters of the party. Art. 3101.

---

[6] The extent to which the State controls the primary election machinery appears from the Texas statutes, as follows: Art. 3118, Vernon's Texas Statutes, provides for the election of a county chairman for each party holding a primary by the "qualified voters of the whole county," and of one member of the party's county executive committee by the "qualified voters of their respective election precincts." These officers have direct charge of the primary. There is in addition statutory provision for a party convention: the voters in each precinct choose delegates to a county convention, and the latter chooses delegates to a state convention. Art. 3134. The state convention has authority to choose the state executive committee and its chairman. Art. 3139, 1939 Supp. Candidates for offices to be filled by election are required to be nominated at a primary election if the nominating party cast over 100,000 votes at the preceding general election. Art. 3101. The date of the primary is fixed at the fourth Saturday in July; a majority is required for nomination, and if no candidate receives a majority, a run-off primary between the two highest standing candidates is held on the fourth Saturday in August. Art. 3102. Polling places may not be within a hundred yards of those used by the opposite party. Art. 3103. Each precinct primary is to be conducted by a presiding judge and the assistants he names. These officials are selected by the county executive committee. Art. 3104. Absentee voting machinery provided by the State for general elections is also used in primaries. Art. 2956. The presiding judges are given legal authority similar to that of judges at general elections. Compare Art. 3105 with Art. 3002. The county executive committee may decide whether county officers are to be nominated by majority or plurality vote. Art. 3106. The state

The Democratic party of Texas is held by the Supreme Court of that State to be a "voluntary association," *Bell* v. *Hill,* 123 Tex. 531, 534, protected by § 27 of the Bill of Rights, Art. 1, Constitution of Texas, from interference by the State except that:

"In the interest of fair methods and a fair expression by their members of their preferences in the selection of their

executive committee is given power to fix qualifications of party membership, Art. 3107; Art. 2955, 1942 Supp., requires payment of a poll tax by voters in primary elections, and Art. 3093 (3) deals with political qualifications of candidates for nomination for United States Senator. But cf. *Bell* v. *Hill,* 123 Tex. 531, 74 S. W. 2d 113. Art. 3108 empowers the county committee to prepare a budget covering the cost of the primary and to require each candidate to pay a fair share. The form of the ballot is prescribed by Art. 3109. Art. 3101 provides that the nominations be made by the qualified voters of the party. Cf. Art. 3091. Art. 3110 prescribes a test for voters who take part in the primary. It reads as follows:

"No official ballot for primary election shall have on it any symbol or device or any printed matter, except a uniform primary test, reading as follows: 'I am a . . . (inserting name of political party or organization of which the voter is a member) and pledge myself to support the nominee of this primary;' and any ballot which shall not contain such printed test above the names of the candidates thereon, shall be void and shall not be counted." This appears, however, to be a morally rather than a legally enforcible pledge. See *Love* v. *Wilcox,* 119 Tex. 256, 28 S. W. 2d 515.

Arts. 3092 and 3111 to 3114 deal with the mechanics of procuring a place on the primary ballot for federal, state, district, or county office. The request for a place on the ballot may be made to the state, district or county party chairman, either by the person desiring nomination or by twenty-five qualified voters. The ballot is prepared by a subcommittee of the county executive committee. Art. 3115. A candidate must pay his share of the expenses of the election before his name is placed on the ballot. Art. 3116. Art. 3116, however, limits the sum that may be charged candidates for certain posts, such as the offices of district judge, judge of the Court of Civil Appeals, and senator and representative in the state and federal legislatures, and for some counties fees are fixed by Arts. 3116 a–d, 1939 Supp., and 3116 e–f, 1942 Supp. Supplies for the election are dis-

nominees, the State may regulate such elections by proper laws." p. 545.

That court stated further:

"Since the right to organize and maintain a political party is one guaranteed by the Bill of Rights of this State, it necessarily follows that every privilege essential or reasonably appropriate to the exercise of that right is likewise

---

tributed by the county committee, Art. 3119, and Art. 3120 authorizes the use of voting booths, ballot boxes and guard rails, prepared for the general election, "for the organized political party nominating by primary election that cast over one hundred thousand votes at the preceding general election." The county tax collector must supply lists of qualified voters by precincts; and these lists must be used at the primary. Art. 3121. The same precautions as to secrecy and the care of the ballots must be observed in primary as in general elections. Art. 3122. Arts. 3123–25 cover the making of returns to the county and state chairmen and canvass of the result by the county committee. By Art. 3127, a statewide canvass is required of the state executive committee for state and district officers and a similar canvass by the state convention, with respect to state officers, is provided by Art. 3138. The nominations for district offices are certified to the county clerks, and for state officers to the Secretary of State. Arts. 3127, 3137, 3138. Ballot boxes and ballots are to be returned to the county clerk, Art. 3128, 1942 Supp., and upon certification by the county committee, the county clerk must publish the result. Art. 3129, 1942 Supp. If no objection is made within five days, the name of the nominee is then to be placed on the official ballot by the county clerk. Art. 3131, 1942 Supp. Cf. Arts. 2978, 2984, 2992, 2996. Arts. 3146–53, 1942 Supp., provide for election contests. The state district courts have exclusive original jurisdiction, and the Court of Civil Appeals has appellate jurisdiction. The state courts are also authorized to issue writs of mandamus to require executive committees, committeemen, and primary officers to discharge the duties imposed by the statute. Art. 3142; cf. Art. 3124.

The official ballot is required to contain parallel columns for the nominees of the respective parties, a column for independent candidates, and a blank column for such names as the voters care to write in. Arts. 2978, 2980. The names of nominees of a party casting more than 100,000 votes at the last preceding general election may not be printed on the ballot unless they were chosen at a primary

guaranteed,—including, of course, the privilege of determining the policies of the party and its membership. Without the privilege of determining the policy of a political association and its membership, the right to organize such an association would be a mere mockery. We think these rights,—that is, the right to determine the membership of a political party and to determine its policies, of necessity are to be exercised by the state convention of such party, and cannot, under any circumstances, be conferred upon a state or governmental agency." p. 546. Cf. *Waples* v. *Marrast,* 108 Tex. 5, 184 S. W. 180.

The Democratic party on May 24, 1932, in a state convention adopted the following resolution, which has not since been "amended, abrogated, annulled or avoided":

"Be it resolved that all white citizens of the State of Texas who are qualified to vote under the Constitution and laws of the State shall be eligible to membership in the

election. Art. 2978. Candidates who are not party nominees may have their names printed on the ballot by complying with Arts. 3159–62. These sections require applications to be filed with the Secretary of State, county judge, or mayor, for state and district, county, and city offices, respectively. The applications must be signed by qualified voters to the number of from one to five per cent of the ballots cast at the preceding election, depending on the office. Each signer must take an oath to the effect that he did not participate in a primary at which a candidate for the office in question was nominated. While this requirement has been held to preclude one who has voted in the party primary from appearing on the ballot as an independent, *Westerman* v. *Mims,* 111 Tex. 29, 227 S. W. 178; see *Cunningham* v. *McDermett,* 277 S. W. 218 (Civ. App.), one who lost at the primary may still be elected at the general election by a write-in vote. *Cunningham* v. *McDermett, supra.*

The operations of the party are restricted by the State in one other important respect. By Art. 3139, 1939 Supp., the state convention can announce a platform of principles, but its submission at the primary is a prerequisite to party advocacy of specific legislation. Art. 3133.

Democratic party and, as such, entitled to participate in its deliberations."

It was by virtue of this resolution that the respondents refused to permit the petitioner to vote.

Texas is free to conduct her elections and limit her electorate as she may deem wise, save only as her action may be affected by the prohibitions of the United States Constitution or in conflict with powers delegated to and exercised by the National Government.[7] The Fourteenth Amendment forbids a State from making or enforcing any law which abridges the privileges or immunities of citizens of the United States and the Fifteenth Amendment specifically interdicts any denial or abridgement by a State of the right of citizens to vote on account of color. Respondents appeared in the District Court and the Circuit Court of Appeals and defended on the ground that the Democratic party of Texas is a voluntary organization with members banded together for the purpose of selecting individuals of the group representing the common political beliefs as candidates in the general election. As such a voluntary organization, it was claimed, the Democratic party is free to select its own membership and limit to whites participation in the party primary. Such action, the answer asserted, does not violate the Fourteenth, Fifteenth or Seventeenth Amendment as officers of government cannot be chosen at primaries and the Amendments are applicable only to general elections where governmental officers are actually elected. Primaries, it is said, are political party affairs, handled by party, not governmental, officers. No appearance for respondents is made in this Court. Arguments presented here by the Attorney General of Texas and the Chairman of the State Democratic Executive Committee of Texas, as amici

---

[7] Cf. *Parker* v. *Brown,* 317 U. S. 341, 359–60.

curiae, urged substantially the same grounds as those advanced by the respondents.

The right of a Negro to vote in the Texas primary has been considered heretofore by this Court. The first case was *Nixon* v. *Herndon,* 273 U. S. 536. At that time, 1924, the Texas statute, Art. 3093a, afterwards numbered Art. 3107 (Rev. Stat. 1925) declared "in no event shall a Negro be eligible to participate in a Democratic Party primary election in the State of Texas." Nixon was refused the right to vote in a Democratic primary and brought a suit for damages against the election officers under R. S. §§ 1979 and 2004, the present §§ 43 and 31 of Title 8, U. S. C., respectively. It was urged to this Court that the denial of the franchise to Nixon violated his Constitutional rights under the Fourteenth and Fifteenth Amendments. Without consideration of the Fifteenth, this Court held that the action of Texas in denying the ballot to Negroes by statute was in violation of the equal protection clause of the Fourteenth Amendment and reversed the dismissal of the suit.

The legislature of Texas reenacted the article but gave the State Executive Committee of a party the power to prescribe the qualifications of its members for voting or other participation. This article remains in the statutes. The State Executive Committee of the Democratic party adopted a resolution that white Democrats and none other might participate in the primaries of that party. Nixon was refused again the privilege of voting in a primary and again brought suit for damages by virtue of § 31, Title 8, U. S. C. This Court again reversed the dismissal of the suit for the reason that the Committee action was deemed to be state action and invalid as discriminatory under the Fourteenth Amendment. The test was said to be whether the Committee operated as representative of the State in the discharge of the State's authority. *Nixon* v. *Condon,* 286 U. S. 73. The question of the inherent power

of a political party in Texas "without restraint by any law to determine its own membership" was left open. *Id.,* 84–85.

In *Grovey* v. *Townsend,* 295 U. S. 45, this Court had before it another suit for damages for the refusal in a primary of a county clerk, a Texas officer with only public functions to perform, to furnish petitioner, a Negro, an absentee ballot. The refusal was solely on the ground of race. This case differed from *Nixon* v. *Condon, supra,* in that a state convention of the Democratic party had passed the resolution of May 24, 1932, hereinbefore quoted. It was decided that the determination by the state convention of the membership of the Democratic party made a significant change from a determination by the Executive Committee. The former was party action, voluntary in character. The latter, as had been held in the *Condon* case, was action by authority of the State. The managers of the primary election were therefore declared not to be state officials in such sense that their action was state action. A state convention of a party was said not to be an organ of the State. This Court went on to announce that to deny a vote in a primary was a mere refusal of party membership with which "the State need have no concern," *loc. cit.* at 55, while for a State to deny a vote in a general election on the ground of race or color violated the Constitution. Consequently, there was found no ground for holding that the county clerk's refusal of a ballot because of racial ineligibility for party membership denied the petitioner any right under the Fourteenth or Fifteenth Amendment.

Since *Grovey* v. *Townsend* and prior to the present suit, no case from Texas involving primary elections has been before this Court. We did decide, however, *United States* v. *Classic,* 313 U. S. 299. We there held that § 4 of Article I of the Constitution authorized Congress to regulate primary as well as general elections, 313 U. S. at 316, 317,

"where the primary is by law made an integral part of the election machinery." 313 U. S. at 318. Consequently, in the *Classic* case, we upheld the applicability to frauds in a Louisiana primary of §§ 19 and 20 of the Criminal Code. Thereby corrupt acts of election officers were subjected to Congressional sanctions because that body had power to protect rights of federal suffrage secured by the Constitution in primary as in general elections. 313 U. S. at 323. This decision depended, too, on the determination that under the Louisiana statutes the primary was a part of the procedure for choice of federal officials. By this decision the doubt as to whether or not such primaries were a part of "elections" subject to federal control, which had remained unanswered since *Newberry* v. *United States,* 256 U. S. 232, was erased. The *Nixon Cases* were decided under the equal protection clause of the Fourteenth Amendment without a determination of the status of the primary as a part of the electoral process. The exclusion of Negroes from the primaries by action of the State was held invalid under that Amendment. The fusing by the *Classic* case of the primary and general elections into a single instrumentality for choice of officers has a definite bearing on the permissibility under the Constitution of excluding Negroes from primaries. This is not to say that the *Classic* case cuts directly into the rationale of *Grovey* v. *Townsend.* This latter case was not mentioned in the opinion. *Classic* bears upon *Grovey* v. *Townsend* not because exclusion of Negroes from primaries is any more or less state action by reason of the unitary character of the electoral process but because the recognition of the place of the primary in the electoral scheme makes clear that state delegation to a party of the power to fix the qualifications of primary elections is delegation of a state function that may make the party's action the action of the State. When *Grovey* v. *Townsend* was written, the Court looked upon the denial of a vote in a primary as a

mere refusal by a party of party membership. 295 U. S. at 55. As the Louisiana statutes for holding primaries are similar to those of Texas, our ruling in *Classic* as to the unitary character of the electoral process calls for a reexamination as to whether or not the exclusion of Negroes from a Texas party primary was state action.

The statutes of Texas relating to primaries and the resolution of the Democratic party of Texas extending the privileges of membership to white citizens only are the same in substance and effect today as they were when *Grovey* v. *Townsend* was decided by a unanimous Court. The question as to whether the exclusionary action of the party was the action of the State persists as the determinative factor. In again entering upon consideration of the inference to be drawn as to state action from a substantially similar factual situation, it should be noted that *Grovey* v. *Townsend* upheld exclusion of Negroes from primaries through the denial of party membership by a party convention. A few years before, this Court refused approval of exclusion by the State Executive Committee of the party. A different result was reached on the theory that the Committee action was state authorized and the Convention action was unfettered by statutory control. Such a variation in the result from so slight a change in form influences us to consider anew the legal validity of the distinction which has resulted in barring Negroes from participating in the nominations of candidates of the Democratic party in Texas. Other precedents of this Court forbid the abridgement of the right to vote. *United States* v. *Reese*, 92 U. S. 214, 217; *Neal* v. *Delaware*, 103 U. S. 370, 388; *Guinn* v. *United States*, 238 U. S. 347, 361; *Myers* v. *Anderson*, 238 U. S. 368, 379; *Lane* v. *Wilson*, 307 U. S. 268.

It may now be taken as a postulate that the right to vote in such a primary for the nomination of candidates without discrimination by the State, like the right to vote

in a general election, is a right secured by the Constitution. *United States* v. *Classic,* 313 U. S. at 314; *Myers* v. *Anderson,* 238 U. S. 368; *Ex parte Yarbrough,* 110 U. S. 651, 663 *et seq.* By the terms of the Fifteenth Amendment that right may not be abridged by any State on account of race. Under our Constitution the great privilege of the ballot may not be denied a man by the State because of his color.

We are thus brought to an examination of the qualifications for Democratic primary electors in Texas, to determine whether state action or private action has excluded Negroes from participation. Despite Texas' decision that the exclusion is produced by private or party action, *Bell* v. *Hill, supra,* federal courts must for themselves appraise the facts leading to that conclusion. It is only by the performance of this obligation that a final and uniform interpretation can be given to the Constitution, the "supreme Law of the Land." *Nixon* v. *Condon,* 286 U. S. 73, 88; *Standard Oil Co.* v. *Johnson,* 316 U. S. 481, 483; *Bridges* v. *California,* 314 U. S. 252; *Lisenba* v. *California,* 314 U. S. 219, 238; *Union Pacific R. Co.* v. *United States,* 313 U. S. 450, 467; *Drivers Union* v. *Meadowmoor Co.,* 312 U. S. 287, 294; *Chambers* v. *Florida,* 309 U. S. 227, 228. Texas requires electors in a primary to pay a poll tax. Every person who does so pay and who has the qualifications of age and residence is an acceptable voter for the primary. Art. 2955. As appears above in the summary of the statutory provisions set out in note 6, Texas requires by the law the election of the county officers of a party. These compose the county executive committee. The county chairmen so selected are members of the district executive committee and choose the chairman for the district. Precinct primary election officers are named by the county executive committee. Statutes provide for the election by the voters of precinct

delegates to the county convention of a party and the selection of delegates to the district and state conventions by the county convention. The state convention selects the state executive committee. No convention may place in platform or resolution any demand for specific legislation without endorsement of such legislation by the voters in a primary. Texas thus directs the selection of all party officers.

Primary elections are conducted by the party under state statutory authority. The county executive committee selects precinct election officials and the county, district or state executive committees, respectively, canvass the returns. These party committees or the state convention certify the party's candidates to the appropriate officers for inclusion on the official ballot for the general election. No name which has not been so certified may appear upon the ballot for the general election as a candidate of a political party. No other name may be printed on the ballot which has not been placed in nomination by qualified voters who must take oath that they did not participate in a primary for the selection of a candidate for the office for which the nomination is made.

The state courts are given exclusive original jurisdiction of contested elections and of mandamus proceedings to compel party officers to perform their statutory duties.

We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the State in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party. The plan of the Texas primary follows substantially that of Louisiana, with the exception that in

Louisiana the State pays the cost of the primary while Texas assesses the cost against candidates. In numerous instances, the Texas statutes fix or limit the fees to be charged. Whether paid directly by the State or through state requirements, it is state action which compels. When primaries become a part of the machinery for choosing officials, state and national, as they have here, the same tests to determine the character of discrimination or abridgement should be applied to the primary as are applied to the general election. If the State requires a certain electoral procedure, prescribes a general election ballot made up of party nominees so chosen and limits the choice of the electorate in general elections for state offices, practically speaking, to those whose names appear on such a ballot, it endorses, adopts and enforces the discrimination against Negroes, practiced by a party entrusted by Texas law with the determination of the qualifications of participants in the primary. This is state action within the meaning of the Fifteenth Amendment. *Guinn* v. *United States,* 238 U. S. 347, 362.

The United States is a constitutional democracy. Its organic law grants to all citizens a right to participate in the choice of elected officials without restriction by any State because of race. This grant to the people of the opportunity for choice is not to be nullified by a State through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election. Constitutional rights would be of little value if they could be thus indirectly denied. *Lane* v. *Wilson,* 307 U. S. 268, 275.

The privilege of membership in a party may be, as this Court said in *Grovey* v. *Townsend,* 295 U. S. 45, 55, no concern of a State. But when, as here, that privilege is also the essential qualification for voting in a primary to select nominees for a general election, the State makes the action

of the party the action of the State. In reaching this conclusion we are not unmindful of the desirability of continuity of decision in constitutional questions.[8] However, when convinced of former error, this Court has never felt constrained to follow precedent. In constitutional questions, where correction depends upon amendment and not upon legislative action this Court throughout its history has freely exercised its power to reexamine the basis of its constitutional decisions. This has long been accepted practice,[9] and this practice has continued to this day.[10] This is particularly true when the decision believed erroneous is the application of a constitutional principle rather

---

[8] Cf. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 652.

[9] See cases collected in the dissenting opinion in *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, 410.

[10] See e. g., *United States* v. *Darby*, 312 U. S. 100, overruling *Hammer* v. *Dagenhart*, 247 U. S. 251; *California* v. *Thompson*, 313 U. S. 109, overruling *DiSanto* v. *Pennsylvania*, 273 U. S. 34; *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, overruling *Adkins* v. *Children's Hospital*, 261 U. S. 525; *Helvering* v. *Mountain Producers Corp.*, 303 U. S. 376, overruling *Gillespie* v. *Oklahoma*, 257 U. S. 501 and *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393; *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, overruling *Swift* v. *Tyson*, 16 Pet. 1; *Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466, overruling *Collector* v. *Day*, 11 Wall. 113, and *New York ex rel. Rogers* v. *Graves*, 299 U. S. 401; *O'Malley* v. *Woodrough*, 307 U. S. 277, overruling *Miles* v. *Graham*, 268 U. S. 501; *Madden* v. *Kentucky*, 309 U. S. 83, overruling *Colgate* v. *Harvey*, 296 U. S. 404; *Helvering* v. *Hallock*, 309 U. S. 106, overruling *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39 and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48; *Nye* v. *United States*, 313 U. S. 33, overruling *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402; *Alabama* v. *King & Boozer*, 314 U. S. 1, overruling *Panhandle Oil Co.* v. *Knox*, 277 U. S. 218 and *Graves* v. *Texas Co.*, 298 U. S. 393; *Williams* v. *North Carolina*, 317 U. S. 287, overruling *Haddock* v. *Haddock*, 201 U. S. 562; *State Tax Commission* v. *Aldrich*, 316 U. S. 174, overruling *First National Bank* v. *Maine*, 284 U. S. 312; *Board of Education* v. *Barnette*, 319 U. S. 624, overruling *Minersville School District* v. *Gobitis*, 310 U. S. 586.

than an interpretation of the Constitution to extract the principle itself.[11] Here we are applying, contrary to the recent decision in *Grovey* v. *Townsend*, the well-established principle of the Fifteenth Amendment, forbidding the abridgement by a State of a citizen's right to vote. *Grovey* v. *Townsend* is overruled.

*Judgment reversed.*

MR. JUSTICE FRANKFURTER concurs in the result.

MR. JUSTICE ROBERTS:

In *Mahnich* v. *Southern Steamship Co.*, 321 U. S. 96, 105, I have expressed my views with respect to the present policy of the court freely to disregard and to overrule considered decisions and the rules of law announced in them. This tendency, it seems to me, indicates an intolerance for what those who have composed this court in the past have conscientiously and deliberately concluded, and involves an assumption that knowledge and wisdom reside in us which was denied to our predecessors. I shall not repeat what I there said for I consider it fully applicable to the instant decision, which but points the moral anew.

A word should be said with respect to the judicial history forming the background of *Grovey* v. *Townsend*, 295 U. S. 45, which is now overruled.

In 1923 Texas adopted a statute which declared that no negro should be eligible to participate in a Democratic primary election in that State. A negro, a citizen of the United States and of Texas, qualified to vote, except for the provisions of the statute, was denied the opportunity to vote in a primary election at which candidates were to be chosen for the offices of senator and representative in the Congress of the United States. He brought action against the judges of election in a United States court for

---

[11] Cf. Dissent in *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393 at 410.

damages for their refusal to accept his ballot. This court unanimously reversed a judgment dismissing the complaint and held that the judges acted pursuant to state law and that the State of Texas, by its statute, had denied the voter the equal protection secured by the Fourteenth Amendment. *Nixon* v. *Herndon,* 273 U. S. 536 (1927).

In 1927 the legislature of Texas repealed the provision condemned by this court and enacted that every political party in the State might, through its Executive Committee, prescribe the qualifications of its own members and determine in its own way who should be qualified to vote or participate in the party, except that no denial of participation could be decreed by reason of former political or other affiliation. Thereupon the State Executive Committee of the Democratic party in Texas adopted a resolution that white Democrats, and no other, should be allowed to participate in the party's primaries.

A negro, whose primary ballot was rejected pursuant to the resolution, sought to recover damages from the judges who had rejected it. The United States District Court dismissed his action, and the Circuit Court of Appeals affirmed; but this court reversed the judgment and sustained the right of action by a vote of 5 to 4. *Nixon* v. *Condon,* 286 U. S. 73 (1932).

The opinion was written with care. The court refused to decide whether a political party in Texas had inherent power to determine its membership. The court said, however: "Whatever inherent power a state political party has to determine the content of its membership resides in the state convention," and referred to the statutes of Texas to demonstrate that the State had left the Convention free to formulate the party faith. Attention was directed to the fact that the statute under attack did not leave to the party convention the definition of party membership but placed it in the party's State Executive Committee which could not, by any stretch of reasoning, be

held to constitute the party. The court held, therefore, that the State Executive Committee acted solely by virtue of the statutory mandate and as delegate of state power, and again struck down the discrimination against negro voters as deriving force and virtue from state action,—that is, from statute.

In 1932 the Democratic Convention of Texas adopted a resolution that "all white citizens of the State of Texas who are qualified to vote under the Constitution and laws of the State shall be eligible to membership in the Democratic party and as such entitled to participate in its deliberations."

A negro voter qualified to vote in a primary election, except for the exclusion worked by the resolution, demanded an absentee ballot which he was entitled to mail to the judges at a primary election except for the resolution. The county clerk refused to furnish him a ballot. He brought an action for damages against the clerk in a state court. That court, which was the tribunal having final jurisdicion under the laws of Texas, dismissed his complaint and he brought the case to this court for review. After the fullest consideration by the whole court[1] an opinion was written representing its unanimous views and affirming the judgment. *Grovey* v. *Townsend,* 295 U. S. 45 (1935).

I believe it will not be gainsaid the case received the attention and consideration which the questions involved demanded and the opinion represented the views of all the justices. It appears that those views do not now commend themselves to the court. I shall not restate them. They are exposed in the opinion and must stand or fall on their merits. Their soundness, however, is not a matter which presently concerns me.

---

[1] The court was composed of Hughes, C. J., Van Devanter, McReynolds, Brandeis, Sutherland, Butler, Stone, Roberts and Cardozo, JJ.

The reason for my concern is that the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject. In the present term the court has overruled three cases.

In the present case, as in *Mahnich* v. *Southern S. S. Co.*, *supra*, the court below relied, as it was bound to, upon our previous decision. As that court points out, the statutes of Texas have not been altered since *Grovey* v. *Townsend* was decided. The same resolution is involved as was drawn in question in *Grovey* v. *Townsend*. Not a fact differentiates that case from this except the names of the parties.

It is suggested that *Grovey* v. *Townsend* was overruled *sub silentio* in *United States* v. *Classic*, 313 U. S. 299. If so, the situation is even worse than that exhibited by the outright repudiation of an earlier decision, for it is the fact that, in the *Classic* case, *Grovey* v. *Townsend* was distinguished in brief and argument by the Government without suggestion that it was wrongly decided, and was relied on by the appellees, not as a controlling decision, but by way of analogy. The case is not mentioned in either of the opinions in the *Classic* case. Again and again it is said in the opinion of the court in that case that the voter who was denied the right to vote was a fully qualified voter. In other words, there was no question of his being a person entitled under state law to vote in the primary. The offense charged was the fraudulent denial of his conceded right by an election officer because of his race. Here the question is altogether different. It is whether, in a Democratic primary, he who tendered his vote was a member of the Democratic party.

I do not stop to call attention to the material differences between the primary election laws of Louisiana under consideration in the *Classic* case and those of Texas which are here drawn in question. These differences were spelled out in detail in the Government's brief in the *Classic* case and emphasized in its oral argument. It is enough to say that the Louisiana statutes required the primary to be conducted by state officials and made it a state election, whereas, under the Texas statute, the primary is a party election conducted at the expense of members of the party and by officials chosen by the party. If this court's opinion in the *Classic* case discloses its method of overruling earlier decisions, I can only protest that, in fairness, it should rather have adopted the open and frank way of saying what it was doing than, after the event, characterize its past action as overruling *Grovey* v. *Townsend* though those less sapient never realized the fact.

It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is steadfastness of thought and purpose, this court, which has been looked to as exhibiting consistency in adjudication, and a steadiness which would hold the balance even in the face of temporary ebbs and flows of opinion, should now itself become the breeder of fresh doubt and confusion in the public mind as to the stability of our institutions.