Taft, C. J.,
dissenting. Heretofore, because of pronouncements of law and decisions of this court, investors in Ohio public utilities have probably enjoyed greater benefits than have investors in public utilities in any other jurisdiction. However, in my opinion, the decisions in these cases and General Telephone Co. v. Public Utilities Commission and City of Pay-ton v. Public Utilities Commission, which are all being decided today, require the extension of those benefits well beyond what can reasonably be justified under the statutes of this state. I am also concerned about these decisions because, to use the words of Mr. Justice Roberts in Smith v. Allwright (1944), 321 U. S., 649, 669, 88 L. Ed., 987, 64 S. Ct., 757, 151 A. L. R., 1110, they tend “to bring adjudications of this tribunal [in public utility rate cases] into the same class as a restricted railroad ticket, good for this day and train only”; and because, “in view of” these decisions, there is “no assurance” that they also “may not shortly be repudiated and overruled by justices who deem they have new light on the subject.” These decisions will invite those who want to make changes in the law as announced and determined by this court to endeavor to effect such changes, not by appropriate legislative action but by bringing before this court a multitude of cases repeatedly raising questions that have previously been decided by this court. This is particularly undesirable with respect to cases of this kind which are brought before this court by direct appeal as a matter of right.
In a “per curiam” opinion (concurred in by Judges Matthias, Zimmerman, Stewart, Bell and Taft) this court stated
*590 in City of Cleveland v. Public Utilities Commission (1956), 164 Ohio St., 442, at page 444 et seq., 132 N. E. (2d), 216:
“In determining the rate of return to which this public utility is entitled, consideration may be given to what would be reasonably required to provide for such items as taxes on income, interest on debt, dividends on stock, and a ‘reservation * * # for surplus, depreciation, and contingencies’ (Section 4909.15, Revised Code) of a company of this kind organised to provide the public with the use of property which is such as this utility provides and which has a value equal to the statutory rate base. Certainly, to give this public utility more than so reasonably required to provide for such items would be to allow it a higher rate of return than our statutes authorize. However, under our statutes, the amount of the debt and of the capital stock of such a hypothetical company would necessarily depend upon the statutory rate base, — not upon the net investment in or capital of Ohio Bell. In other words, the investment in the debt and stock of such a hypothetical company would necessarily be substantially equal to the statutory rate base, and thus, after the many years of operation by Ohio Bell and the changes in costs during those years, would have only a remote relationship to the net investment in Ohio Bell.
“For example, in the instant case the statutory rate base unanimously approved by the commission was over $422,000,000. In considering what the earnings requirements of such a hypothetical company would be, we must recognize that it would have to have, as of the date certain, property which would then have a reconstruction cost new less depreciation of over $422,000,000. * # * Neither appellants nor the opinion of the dissenting commissioner considers the earnings requirements of such a hypothetical company. Instead, they talk only about a company having less than $300,000,000 total for stock and debt. After selling that lesser amount of stock and debt, the company they talk about would have less than $300,000,000 to buy the assets, which our statutes require us to recognize as having for rate-making purposes a value of over $422,000,000.
“It can probably be demonstrated that the earnings requirements of any public utility corporation, that can borrow money at less than 4% interest, would be less if a substantial *591 portion of its capital requirements were provided for partly by debt than its earnings requirements would be if its capital requirements were provided only by stock, especially since the interest payable on debt, unlike dividends payable or earnings on stock, would be deductible under present tax laws in determining the income tax liability of such a corporation. However, appellants have not argued that there is any evidence tending to prove that the amounts available to Ohio Bell by reason of the decision of the Public Utilities Commission in the instant proceedings for requirements, such as taxes on income, interest, dividends, surplus, depreciation and contingencies, would exceed the reasonable requirements therefor for a hypothetical company with a capital sufficient to enable it to acquire $422,000,000 of assets. Their argument, about the earnings requirements of a company having a very much smaller amount of capital, represents a subtle attempt to circumvent the Ohio statutory requirements with respect to determination of the rate base.” (Emphasis added.)
In its brief in Ohio Fuel Gas Co. v. Public Utilities Commission (1960), 171 Ohio St., 10, 167 N. E. (2d), 496 (the so-called Findlay case), the appellant in the instant cases stated:
“In City of Cleveland v. P. U. C. O., 164 Ohio St., 442, the court issued a landmark decision [i. e., one which particularly appealed to the utility] * * *.
“The reasoning of the court in the Cleveland case leads to the inescapable conclusion that the ultimate question to be answered is whether the ‘dollar amount of return’ allowed by the commission in the instant case is sufficient for ‘interest, dividends, surplus, depreciation, and contingencies’ (164 Ohio St., 446) for a hypothetical company having capital approximately equal to the statutory rate base determined in this case. The answer can only be ‘no.’ ” (Emphasis added.) (Perhaps it is significant that the quotation from the Cleveland case omitted the words “taxes on income,” which appeared before the word “interest.”)
A majority of this court in the Findlay case (Judges Zimmerman, Taft, Matthias, Bell and Peck) sustained that contention of the utility and stated in the syllabus of that case:
“Under Offio statutes, in determining the rate of return. *592 to be allowed a public utility on its statutory rate base, consideration must be given to a corporation having a debt and an equity capital in a total amount substantially equal to the statutory rate base [i. e., a hypothetical company], and what is to be allowed for interest on the amount of such debt is what would be reasonably necessary to pay interest on that amount of debt even though what is so allowed for interest may be more or less than what is actually paid by such public utility on its existing indebtedness.” (Emphasis added.)
In the opinion it is stated (page 13):
“In arguing against such a conclusion, the commission contends that, in determining the federal income tax of this gas company, no greater deduction is allowed by the federal government on account of interest paid than an amount equal to the actual interest paid. However, it is obvious, as indicated in City of Cleveland v. Public Utilities Commission, supra, 445, 446 (164 Ohio St., 442), that, in a proceeding such as this, we should not be concerned, in determining the expense to be allowed for federal income tax liability, with the income tax or the interest actually paid by this gas company but with [1] taxes on income [and] interest on debts * * * of a company of this kind organized to provide the public with the use of property which is such as this utility provides and which [property] has a value equal to the statutory rate base,’ and that ‘the debt and stock of such a hypothetical company’ will ‘necessarily be substantially equal to the statutory rate base.’ If such a company would pay more or less interest than this gas company actually does on its debt, the greater or lesser amount of interest that such a company would so pay should, in a proceeding such as this, be used as a factor in determining the income tax liability that such a company would have.” (Emphasis added.)
The dissenting opinion in that case (concurred in by Weygandt, C. J., and Thomas J. Herbert, J.) contended against the allowance to the utility for interest of anything more than what it would pay for interest, which is the same result contended for by the ratepayers in the instant cases and the cases being decided with them.
Thereafter, where the commission allowed more for interest than the utility would pay for interest (as it was required to do *593 under the decisions of this court in the Cleveland and Findlay cases), the commission consistently took into consideration the whole amount allowed to the utility for interest in determining the amount which should he allowed to the utility for federal income tax. This was required by our decision in the Findlay case (171 Ohio St., 10) and by what was said in our per curiam opinion in the Cleveland case (164 Ohio St., 442, 444).
In Cincinnati Gas & Electric Co. v. Public Utilities Commission (1962), 173 Ohio St., 473, 184 N. E. (2d), 84, and Ohio Edison Co. v. Public Utilities Commission (1962), 173 Ohio St., 478, 184 N. E. (2d), 70, decided in July 1962, the utilities involved argued against the conclusion of the commission that, in determining the amount allowed to a utility for federal income tax, consideration should be given to the whole amount allowed to the utility for interest, instead of only to the lesser amount to he paid by the utility for interest. This is apparent from examination of the briefs in each of those cases, and it appears affirmatively from the opinion in Ohio Edison Co. v. Public Utilities Commission, supra (173 Ohio St., 478), 490, 491, where it is said:
“Ohio Edison complains about the commission’s reduction of the amount allowed as an expense for federal income tax so that it is $21,972 less than the federal income tax actually paid by Ohio Edison.
“* * * the ultimate conclusion reached by the commission as a result of the elimination of this $21,972 from Ohio Edison’s expenses (which probably should have been accomplished by recognizing it merely as a tax advantage in determining the cost of raising capital) is fully sustained by what we decided and what was said in Ohio Fuel Gas Co. v. Public Utilities Commission, supra (171 Ohio St., 10) 13.” (Emphasis added.)
Chief Justice Weygandt and Judges Zimmerman, Taft, Matthias and Bell concurred in the Cincinnati Gas & Electric Co. case judgment which affirmed the order of the commission; and Judges Zimmerman, Taft, Matthias, Bell and Griffith concurred generally in the Ohio Edison case and Chief Justice Weygandt concurred in the judgment which affirmed the order of the commission in that case. Although Judge O’Neill dissented in each case, his dissenting opinions mention neither the *594 complaint of the ultilities about inadequate allowances to them for income tax nor what his opinions in these and the cases being decided with these cases refer to as the “hypothetical company concept.” Actually, Judge O’Neill’s concurrence in paragraph five of the syllabus of the Ohio Edison case (173 Ohio St., 478) could not be reconciled Avith criticism of a so-called ‘ ‘ hypothetical company concept.”
A direct attach upon what is referred to in the majority opinion as the “hypothetical company concept” was made by a utility for the first time in this court in September 1962 when the appellant’s brief in General Telephone Co. v. Public Utilities Commission, 174 Ohio St., 575, was withdrawn and replaced by another brief. No such attack was made by the appellant in the instant cases before it filed its reply brief in cases Nos. 37276 and 37277 in the following month. No such attack has ever been made by the Dayton Power & Light Company in any brief.
The majority opinion, in the lead case of General Telephone Co. v. Public Utilities Commission, 174 Ohio St., 575, Avhich is being decided today, is based upon the major premise stated therein that, when the commission reached the point in computation of allowable rates described by the paragraph numbered 4 in the per curiam opinion of Cleveland v. Public Utilities Commission, supra (164 Ohio St., 442), 443, the commission “created a hypothetical public utility company.” If that major premise is accepted, the conclusions set forth in the majority opinion might seem to follow. However, that premise is fallacious. It ignores the contentions made by the utilities in their briefs and arguments and all the testimony offered by the rate-of-return witnesses of the utilities in these and the cases being decided with these cases, and it also disregards Avhat the commission did, as indicated by its orders in those cases.
Thus, it was contended by the utilities in briefs and arguments in each and all of those cases, that, at the point in the computation of allowable rates described by the paragraph numbered 2 of that per curiam opinion, the rate of return should be determined by
(1) taking the actual debt ratio foy the utility and ap *595 plying it against the allowable interest cost to get the percentage of the rate base to be allowed as the cost of debt, i. e., allowed for interest,
(2) taking the actual equity or stock ratio of the utility and applying it against the percentage return to be allowed for equity capital to get the percentage of the rate base to be allowed as the cost of equity capital[1], and
(3) adding the foregoing percentage of the rate base to be allowed for interest to the foregoing percentage of the rate base to be allowed for equity capital to get the percentage of the rate base to be allowed as the rate of return.
The commission did so determine the rate of return in each of those cases. In doing so, it allowed a certain percentage of the rate base for interest.
In every instance, the percentage of the rate base allowed for interest substantially exceeds the percentage of the rate base that the utility will pay for interest. The majority opinion in each of those cases ignores that fact.
The commission recognized that fact in determining the amount that should be allowed to the utility for federal income tax. Semantics and figures should not be allowed to conceal that fact so as to confuse and mislead this court.
The effect of the decisions in each of those cases will apparently be
(1) to give the utility much more for interest than it will pay for interest, i. e., to give it excess or hypothetical interest, and
(2) to give the utility an additional allowance sufficient to pay the federal income tax on that excess or hypothetical interest as though such excess or hypothetical interest had not been allowed as interest.
*596 Admittedly, interest is deductible in determining federal income tax liability. Hence, tbe utility would not have to pay any federal income tax on anything allowed to it for interest if it used for the payment of interest all that is allowed to it for interest. Why should the utility be allowed more for federal income tax then it would be required to pay if it used for interest all that it is allowed for interest?
The effect of the decisions being rendered in these cases and the cases being decided with them will apparently be to give the utility in each case not only a very substantial amount of excess or hypothetical interest but also to give that excess or hypothetical interest to the utility as a tax free return. This would be directly contrary to our holdings in Ohio Fuel Gas Co. v. Public Utilities Commission, supra (171 Ohio St., 10); Ohio Edison Co. v. Public Utilities Commission, supra (173 Ohio St., 478); and Cincinnati Gas & Electric Co. v. Public Utilities Commission, supra (173 Ohio St., 473). See also City of Cleveland v. Public Utilities Commission, supra (164 Ohio St., 442), 444-446; New England Telephone & Telegraph Co. v. Department of Public Utilities (1951), 327 Mass., 81, 91, 97 N. E. (2d), 509; Chesapeake & Potomac Telephone Co. v. Public Service Commission (1952), 201 Md., 170, 190, 93 A. (2d), 249; Petition of Mountain States Telephone & Telegraph Co. (1955), 76 Idaho, 474, 486, 284 P. (2d), 681; Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission (1957), 232 La., 446, 94 So. (2d), 431; State Corporation Commission v. Mountain States Tel. & Tel. Co. (1954), 58 N. M., 260, 277, 270 P. (2d), 685; Southern Bell Tel. & Tel. Co. v. Mississippi Public Service Commission (1959), 237 Miss., 157, 242, 113 So. (2d), 622; New England Telephone & Telegraph Co. v. State (1953), 98 N. H., 211, 220, 97 A. (2d), 213.
Instead of detailing facts and figures in each of the five separate rate proceedings involved in these cases and the other cases being decided with them, I believe it will be sufficient to take the facts and figures in one case as illustrative.
In case No. 37277 (Richland County), hereinafter referred to as the instant case, the utility contended that the rate of return to be allowed it should be determined by
*597 (1) taking the actual debt ratio for tbis utility of 55%[2] and applying it against its actual bistorieal composite interest cost of 4.05% to get tbe 2.23% of the rate base which the utility claims should be allowed as the cost of debt,
(2) taking a common stock ratio for this utility of 45%[2] and applying it to a 10% return[3] (which the utility claims should be allowed) for common stock to get the 4.5% of the rate base which the utility claims should be allowed for cost of common stock, and
(3) adding the 2.23% to the 4.5% to get the 6.73% rate[3] of return on the rate base which the utility claims should be allowed.
In determining the rate of return to be allowed this utility, the commission agreed that the utility should be allowed all the 2.23% of the rate base which the utility claimed should be allowed as the cost of debt.
The allowance to the utility of this 2.23% of the rate base as the cost of debt, which admittedly would be interest, will very substantially exceed the allocable amount of interest actually paid by the utility during the test year, which was approximately only .77% of the rate base.
Admittedly, interest paid is deductible in determining the amount of income subject to federal income tax.
The commission held that the allowance to the utility for federal income tax liability should be determined as if the *598 whole 2.23% of the rate base, allowed to the utility for interest, would be paid by the utility as interest.
This conclusion or its equivalent was required by what was said in the above-quoted portions from the per curiam opinion in the Cleveland case (164 Ohio St., 442) and by our decisions in the Findlay (171 Ohio St., 10), Cincinnati (173 Ohio St., 473) and Ohio Edison (173 Ohio St., 478) cases.
The utility is claiming and will receive from the rate payers an allowance of 2.23% of the rate base for interest. At the same time, the utility takes the inconsistent position that 1.46% of the rate base (the 2.23% allowed for interest less the .77% to be paid for interest) should not be considered deductible as interest in determining the allowance to it for federal income tax because the utility will only pay out .77% as interest instead of that 2.23%. It takes this inconsistent position in order to claim an additional allowance from the ratepayers of approximately 1.46% of the rate base for federal income tax[4] that it will have to pay because it will not pay out as interest 1.46% of the rate base which was allowed to it for interest. Because interest is deductible in determining federal income tax liability, the utility admittedly would not have to pay federal income tax with respect to any part of the 2.23% of the rate base allowed to the utility for interest if it used for payment of interest all of that 2.23% of the rate base that it will receive from the ratepayers for interest.
The utility’s stated contention (that the commission should not allow hypothetical interest or adjust the allowance for federal income tax so as to properly reflect the allowance of hypothetical interest but should consider only actual interest and actual income tax requirements) logically leads to the conclusion contended for by the representatives of the ratepayers, — ■ a conclusion which this utility opposed and which this court rejected in Ohio Fuel Gas Co. v. Public Utilities Commission, supra (171 Ohio St., 10).
The differences between the contentions of the ratepayers, the contentions of the utility and the results called for by this court’s previous decisions are as follows:
*599 1. The ratepayers want to have an allowance in the rate of return for interest of only .77%, which represents the percentage of the rate base which the utility will actually pay out as interest.
2. The utility wants to have an allowance for interest in the rate of return not only for that .77%, which it will actually pay out as interest, but also for an additional 1.46%, which it will not pay out as interest. It further wants an additional allowance for income tax expense of approximately 1.46% of the rate base to enable it to pay federal income tax on the 1.46% of the rate base which is allowed to it for interest but which it will not pay out as interest.
3. Under the previous decisions of this court and the decision of the commission in the instant case, the utility will be allowed .77% plus 1.46% or a total of 2.23% for interest in its rate of return, but in effect will be denied the above-mentioned additional allowance for income tax expense on account of the 1.46% of the rate base allowed to the utility as interest but not to be paid out by the utility for interest.
In the instant case, the reconstruction cost new less depreciation value of the property included in the rate base is over two and three-quarters times the book value or depreciated cost of that property. Thus, if we should approve the contentions of the utility, against any adjustment of the allowance for income tax to reflect the allowance in the rate of return for hypothetical interest, the 5.75% rate of return allowed by the commission would give the holders of common stock a return of about 31% on the original investment in that stock, i. e., on the book value of their shares. This high annual return results because
(1) all the 1.46% of the whole rate base allowed for debt but not paid for debt flows through to and is added to the amount allowed for common stock;
(2) this 1.46% of the whole rate base will necessarily equal 100/45 of 1.46% or 3.24+% of the 45% common stock component of the rate base, and will thus *600 necessarily increase the 8% allowance for common stock to 11.24+% available for common stock;
(3) the rate base is 2%+ times the book value so that the 11.24+% will necessarily equal 2% times 11.24+% or 30.91+% on the original common stock investment in the utility.
Under the commission’s decision, the holders of common stock will receive about 26%%; and, under the contentions made on behalf of ratepayers, they would receive about 22%.
Under the words of our statutes (see especially Sections 4909.15 and 4909.39, Revised Code) providing for the fixing of rates, a utility is to receive only “reasonable compensation for the service rendered.” This court has been required by these statutes, as it has construed them, to recognize the reasonable cost of an amount of capital equal to the rate base as part of the “reasonable compensation for the service rendered” by the property included in that rate base. Because of inflation, this amount of capital equal to the rate base will now almost always be much greater than the actual amount of capital of the utility. As a result, it is now almost impossible under our statute to avoid considering the cost of a greater amount of capital than the utility actually has. Thus, a hypothetical amount of capital must be considered.
No more than reasonable costs should be allowed in determining the “reasonable compensation” to be allowed a utility “for the service rendered” by it. It follows that no more should be allowed as the cost of capital than the reasonable cost of an amount of capital equal to the rate base.
In the instant case, the utility is asking for more than the reasonable cost of an amount of capital equal to the rate base. Thus, it asks for an allowance of approximately 1.46% of the rate base for federal income tax on the 1.46% of the rate base, which is allowed to it for interest but which it will not pay out as interest. Admittedly, interest is deductible in determining federal income tax liability so that anyone providing a given amount of capital would have no income tax liability on account of anything allowed for interest if everything allowed for interest was used for interest.
If the utility were allowed this 1.46% of the rate base for *601 income tax (on account of the 1.46% of the rate base allowed as interest but not to be paid for interest), the utility would have to pay an income tax of approximately 50% on account of that 1.46%. However, that would still leave the utility a .73% additional return on the rate base. Hence, in effect, the result would be either
(1) to increase the utility’s rate of return by .73% from 5.75% to 6.48% or
(2) to increase the reconstruction cost new less depreciation rate base by 12.7% (.73% is 12.7% of the allowed rate of return of 5.75%); and thus to increase the agreed reconstruction cost new less depreciation rate base of $1,860,807 by $236,322 to $2,097,129.

 In the General Telephone and the Dayton Power & Light cases, the equity or stock capital of the utilities includes preferred stock. In those cases, this second step was to be taken to get the percentage of the rate base to be allowed for preferred stock and then an additional step was to be taken to get the percentage to be allowed for common stock.

 The commission stated that these were the ratios “assumed” by the utility’s rate-of-return witness. The commission did not state what ratio it used. However, if the commission used a 4.05% interest rate as its order indicates and an 8% rate of return on equity capital as its order states, then, in order to reach the 5.75% rate of return allowed, it must have used ratios of approximately 57% debt and 43% equity. These ratios substantially correspond with ratios for the utility’s actual debt and for the book value of its equity for the test year 1956. However, as the utility did in its briefs, we will in this opinion use the 55% and 45% ratios although they necessarily lead to a slightly higher rate of return than the 5.75% allowed by the commission.

 The commission allowed only 8% for common stock. Because of that and the ratios used by the commission as indicated in footnote 2, the rate of return allowed was only 5.75%.

 At assumed 50% effective income tax rate on this corporation.