**David TOMEI, et al., Plaintiffs,**

v.

**Morgan FINLEY, et al., Defendants.**

**No. 81 C 1715.**

United States District Court, N. D. Illinois, E. D.

June 30, 1981.

---

Sheldon Gardner, George Pontikes, Foss, Schuman & Drake, Chicago, Ill., for plaintiffs.

William J. Harte, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action stems from a political dispute between the Republican-affiliated party[1] and the Democratic-affiliated party[2] in the Lyons Township elections held April 7, 1981. This Court has already dealt with various of the issues in opinions dated March 30, April 3 and April 6, 1981, which state the facts of the case in some detail. 512 F.Supp. 695. Now defendants move to dismiss for lack of subject matter jurisdiction, asserting the absence of action "under color" of state law.[3] For the reasons stated in this memo-

randum opinion and order defendants' motion is denied.

As for Section 1983, the gravamen of the Complaint is defendants' attempted frustration of the electoral process by the deliberate deception of Republican voters. Beginning with the "white primary cases," *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) and its progeny, it has been established that private conduct that is an integral part of that electoral process meets the need for "state action" as a predicate for federal jurisdiction. However, none of the Supreme Court decisions in this area of law provides more than dicta from which each side tries to draw solace. For example, both plaintiffs and defendants seek to invoke *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978):

One such area has been elections. While the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function. This principle was established by a series of cases challenging the exclusion of blacks from participation in primary elections in Texas. *Terry v. Adams*, 345 U.S. 461 [73 S.Ct. 809, 97 L.Ed. 1152] (1953); *Smith v. Allwright*, 321 U.S. 649 [64 S.Ct. 757, 88 L.Ed. 987] (1944); *Nixon v. Condon*, 286 U.S. 73 [52 S.Ct. 202, 76 L.Ed. 984] (1932). Although the rationale of these cases may be subject to some dispute, their scope is carefully defined. The doctrine does not reach to all forms of private political activity, but encompasses only state-regulated elections or elections conducted by organizations which in practice produce

1. Plaintiffs are the leader and a member of the regular Republican Lyons Township organization, which was both affiliated with and endorsed the "Government for the People" party and its slated candidates.

2. Defendants are the leader of the regular Democratic Lyons Township organization, which was similarly affiliated with and endorsed the "Representation for Every Person" party and its slated candidates, and all of the township

candidates of that party. Their adoption of the party name to permit use of the acronym "REP," and thus to mislead Republican voters, triggered this lawsuit.

3. Plaintiffs invoke both 42 U.S.C. § 1983 ("Section 1983," which does require what is referred to in shorthand terms as "state action") and § 1985 ("Section 1983," which does not).

"the uncontested choice of public officials." *Terry, supra,* [345 U.S.] at 484 [73 S.Ct. at 820] (Clark, J., concurring). As Mr. Justice Black described the situation in *Terry, supra,* at 469 [73 S.Ct. at 813]: "The only election that has counted in this Texas county for more than fifty years has been that held by the Jaybirds from which Negroes were excluded."

Though the issue is certainly not free from doubt in a case where, as here, neither party's nomination is the functional equivalent of election, some language in the Fifth Circuit's opinion in *Riddell v. National Democratic Party,* 508 F.2d 770, 774–75 (5th Cir. 1975) tends to support jurisdiction in this case, as the quoted language from *Flagg* would not.

But this Court need not rely on the arcane mysteries that sometimes attend decisions as to what conduct of persons other than public officials is nonetheless "under color" of state law. *See, e. g., Jenkins v. White Castle Systems, Inc.,* 510 F.Supp. 981 (N.D.Ill.1981). Section 1985 confers federal court jurisdiction over *private* conspiracies where the defendants are allegedly infringing plaintiffs' rights to equal protection or equal privileges and immunities under the laws. *Griffin v. Breckinridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971). Both the First Amendment freedom of political association and the voting franchise must be viewed as among the most valuable "privileges and immunities" in our democratic system. And the *Griffin v. Breckinridge* requirement that the private conspiratorial discrimination involve a "class-based animus" must be held satisfied by an alleged effort to disenfranchise *Republican* voters. Though the particular conduct charged was of course different, the language in *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973) might well have been written for this case:

> We hold that § 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3). This interpretation does not transform the statute into the "general federal tort law" feared by the *Griffin* Court and gives full effect to the Congressional purpose in enacting the statute.

Defendants' arguments cannot be dismissed lightly. On analysis, however, this is not the kind of general tort law claim that the Supreme Court refused to encompass within the coverage of Section 1985(3) in *Great American Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979).

With plaintiffs' action thus withstanding defendants' motion to dismiss, the parties will be expected to proceed actively with necessary discovery. This case is set for a status report August 11, 1981 at 9 a. m.