Paul KUCZO, Jr. and John J. P. Nocerino, Plaintiffs,

v.

WESTERN CONNECTICUT BROAD-CASTING COMPANY et al., Defendants.

Civ. A. No. B–623.

United States District Court, D. Connecticut.

Dec. 20, 1976.

Sidney Vogel, Stamford, Conn., for plaintiffs.

Paul C. Jamieson, Stamford, Conn., for defendants Western Broadcasting Company and Kingsley Gillespie; Dow, Lohnes & Albertson, Washington, D.C. of counsel.

## MEMORANDUM DECISION

LUMBARD, Circuit Judge: [*]

Defendants Western Connecticut Broadcasting Company ("Western") and Kingsley Gillespie have moved for summary judgment in this action brought by two unsuccessful mayoral candidates in the Stamford, Connecticut 1969 election who are seeking damages for censorship of their radio advertisements in violation of the first

[*] Sitting by designation.

1. The initial decision of the hearing examiner is reported at 43 F.C.C.2d 752 (1972), and the

amendment. For the reasons hereinafter discussed, the motion will be denied.

In 1969 Western was the Federal Communications Commission licensee of radio stations WSTC and WSTC–FM. These were the only stations licensed in Stamford, Connecticut, a city of over 100,000 persons. Defendant Julian Schwartz was the general manager in charge of the day-to-day operation of the station. He consulted on a regular basis with Gillespie, the president and majority stockholder of Western.

In the 1969 elections there were three candidates for Mayor of Stamford—Julius Wilensky, Republican; plaintiff Paul Kuczo, Democrat; and plaintiff John J. P. Nocerino, Fusion Party—and each ran a number of paid political announcements and programs on WSTC and WSTC–FM during the campaign. All scripts of Kuczo's and Nocerino's broadcasts were reviewed prior to air-time by Schwartz at his insistence, and on a number of occasions Schwartz ordered the excision of material that he claimed was in bad taste. For various reasons, however, Schwartz considered it unnecessary for him to review the scripts of the third candidate, Wilensky. Gillespie admits that he had approved Schwartz's policy of reviewing scripts, but denies knowledge of any compulsory excisions.

The election was won by Wilensky with 19,816 votes to Kuczo's 15,415 and Nocerino's 723. After a hearing before one of its examiners, the FCC held the review and censorship of candidates' scripts to be a flagrant violation of section 315(a) of the Communications Act of 1934, 47 U.S.C. § 315, and regulations thereunder, and Western was fined $10,000.[1]

Conceding, as they must, that the censorship was contrary to first amendment standards, see *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), defendants maintain

Commission's decision is at 43 F.C.C.2d 730 (1974).

that no violation of the first amendment occurred because there was no governmental action. The excisions were made by a private employee acting in the course of his employment with a private corporation, and his actions were not only not approved by the FCC but were specifically condemned by it in subsequent review proceedings. Defendants point out that government regulation does not always convert private conduct into governmental action for purposes of the fourteenth amendment and the Bill of Rights. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176–77, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). It has not been resolved what actions by broadcasters licensed and regulated by the FCC constitute federal action. Compare *CBS, Inc. v. Democratic National Comm.,* 412 U.S. 94, 114–20, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973) (Burger, C. J., plurality opinion), with id. at 146–47, 93 S.Ct. 2080 (White, J., concurring), id. at 172–81, 93 S.Ct. 2080 (Brennan, J., dissenting), and *Writers Guild v. FCC,* 423 F.Supp. 1064 (C.D.Cal.1976).

█ "[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* supra, 419 U.S. at 351, 95 S.Ct. at 453; *Moose Lodge No. 107 v. Irvis,* supra, 407 U.S. at 176, 92 S.Ct. 1965. Here the government has ensured that one radio station will have a monopoly of Stamford local airways. If a candidate in a local Stamford election wishes to reach eligible voters over the radio, WSTC and WSTC–FM are the most natural and efficient carriers available. Censorship by these stations has the same effect on free speech as would a Stamford local ordinance that censored po-

litical broadcasts over local radio stations. Thus, by giving Western monopoly control over the local airways, federal regulation has invested Western with the capacity to obstruct free speech in local elections. Monopoly is a prime concern of the first amendment. Having created and preserved the opportunity for abuses that are exactly what the first amendment is designed to prohibit, the government and those who operate under a government license cannot avoid constitutional responsibility simply on the ground that the malefactor was not a government employee. Cf. *Smith v. Allwright,* 321 U.S. 649, 664, 64 S.Ct. 757, 88 L.Ed. 987 (1944).

It is this nexus between the governmental regulation and the constitutional right in issue that imbues the defendants' actions with governmental character vis-à-vis that right. Cf. *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). The Supreme Court has at times rejected government-established monopolies or partial monopolies as bases for a finding of state action, but only because "there was insufficient relationship between the challenged actions of the entities involved and their monopoly status." *Jackson v. Metropolitan Edison Co.,* supra, 419 U.S. at 352, 95 S.Ct. at 454; *Moose Lodge No. 107 v. Irvis,* supra, 407 U.S. at 176, 92 S.Ct. 1965; *Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 462, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). Here, by contrast, it is the government's restrictions on competitive entry that magnify the impact which its licensee's decisions can have on free speech.[2]

█ That the defendants' censorship violated the government's laws and regulations does not insulate them from responsibilities for violations of the first amendment rights. The mere fact that conduct is prohibited by the government's own law does not mean that it cannot be governmen-

---

**2.** Of course, there is a slight possibility that Western might have been able to maintain a natural monopoly over radio broadcasting in Stamford even without the federal government's intervention. See *Jackson v. Metropolitan Edison Co.,* supra, 419 U.S. at 351–52 n. 8, 95 S.Ct. 449. It is also possible that the FCC

may some day decide to license a second Stamford station. Regardless of these speculations, however, the crucial fact from the first amendment standpoint is that it was government regulation that intentionally ensured Western's monopoly at the time of the censorship.

tal action for purposes of the fourteenth amendment and the Bill of Rights. See, e. g., *Home Telegraph & Telephone Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913). Although governmental approval is one factor in the state action calculus, see *The Supreme Court, 1974 Term,* 89 Harv.L.Rev. 47, 145–47 (1975), it should not be dispositive where the functional nexus between governmental involvement and the constitutional concern is as strong as here. The government has delegated its control over local airways to the radio station. For the frustrated candidate, censorship by the radio station has the same immediate impact on his freedom of speech whether or not government reprisals will ultimately be forthcoming against the censor long after the damage has been done. Consequently, we conclude that the actions by the radio station and its employees did constitute federal action subject to the first amendment under the circumstances of this case.[3]

■ The question of jurisdiction must also be considered. Since our finding of governmental action is premised on licensing and regulation by the FCC, a federal agency, clearly it is the first amendment that has been violated and not the fourteenth; thus 42 U.S.C. § 1983 is inapplicable, since there has been no action "under color of state law." Based on the material submitted to us, which include the findings of fact by the FCC and an affidavit from defendant Gillespie, it is clear that plaintiffs do not have a cause of action under 42 U.S.C. § 1985(3). That section requires proof of a conspiracy to deprive a person of equal protection of the laws; there must be "class-based, invidiously discriminatory ani-

mus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). See also *Kletschka v. Driver,* 411 F.2d 436, 447 (2d Cir. 1969); *Slegeski v. Ilg,* 395 F.Supp. 1253, 1255 (D.Conn.1975); *Arnold v. Tiffany,* 359 F.Supp. 1034, 1036 (C.D.Cal.), aff'd, 487 F.2d 216 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). No such conspiracy was present here: not knowing that defendant Schwartz was treating the plaintiffs any differently from the Republican candidate Wilensky,[4] defendant Gillespie obviously cannot have been acting with any "discriminatory animus." Without a claim under 42 U.S.C. § 1983 or 1985, plaintiffs cannot use 28 U.S.C. § 1343(3) or (4) as their basis for jurisdiction.

Nevertheless, we find jurisdiction available under 28 U.S.C. § 1331. Plaintiffs have alleged more than $10,000 in controversy. In *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that victims of unconstitutional searches and seizures may invoke federal question jurisdiction in order to sue federal agents for damages directly under the fourth amendment. The right to free speech is certainly as fundamental a right as the right to be free from unreasonable searches and seizures. The compensatory and deterrent functions of a damage action are similar in both cases. Damage calculations for deprivation of free speech may be speculative or indeterminate but not markedly more so than for deprivations of fourth amendment rights. Nor should the availability of other remedies— license revocations and fines by the FCC[5] —make more difference here than they did

---

**3.** In reaching this decision on governmental action, the court has not had to decide what all the boundaries of governmental action are in the FCC context. For example, oligopoly rather than monopoly radio stations, programing of a different character or addressed to different audiences, and situations where the free speech rights of the broadcaster are also involved may present more subtle issues than those obtaining in the present case.

**4.** This was the FCC's finding, see 43 F.C.C.2d at 733, and the plaintiffs have relied on the FCC findings as their only evidentiary material on this summary judgment motion, see Fed.R. Civ.P. 56(e).

**5.** Several courts have rejected the possibility of implied private rights of action under the Federal Communications Act. See *Daly v. Columbia Broadcasting System, Inc.,* 309 F.2d 83, 85 (7th Cir. 1962); *Gordon v. NBC,* 287 F.Supp. 452 (S.D.N.Y.1968).

in the *Bivens* case, where the Court specifically rejected the theory that the availability of state common law tort remedies foreclosed plaintiffs from suing for damages directly under the fourth amendment. *Bivens,* supra at 394–95, 91 S.Ct. 1999. Thus, we find the reasoning of *Bivens* equally compelling for the first amendment as for the fourth, and accordingly we hold that actions for damages under the first amendment are cognizable under 28 U.S.C. § 1331.[6]

The motion for summary judgment made by defendants is denied.

**6.** This question was reserved in *Holodnak v. Avco Corp.,* 514 F.2d 285, 292 (2d Cir.), cert.

denied, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975).