**Paul KUCZO, Jr. and John J. P. Nocerino, Plaintiffs-Appellees,**

v.

**WESTERN CONNECTICUT BROADCASTING CO. and Kingsley Gillespie, Defendants-Appellants,**

**and**

**Julian Schwartz, Defendant.**

**No. 24, Docket 77–7111.**

United States Court of Appeals, Second Circuit.

Argued Sept. 1, 1977.

Decided Oct. 27, 1977.

---

Thomas H. Wall, Washington, D. C., Paul C. Jamieson, Stamford, Conn. (Alan C. Campbell, Richard D. Marks, John R. Feore, Jr., Dow, Lohnes & Albertson, Washington, D. C., of counsel), for defendants-appellants Western Connecticut Broadcasting and Kingsley Gillespie.

Sidney Vogel, Stamford, Conn., for plaintiffs-appellees Paul Kuczo, Jr. and John J. P. Nocerino.

Timothy B. Dyk, Washington, D. C. (J. Roger Wollenberg, Donald C. Langevoort, Wilmer, Cutler & Pickering, Washington, D. C., Ralph E. Goldberg, New York City, of counsel), for amicus curiae CBS, Inc.

James A. McKenna, Jr., Carl R. Ramey, McKenna, Wilkinson & Kittner, Washington, D. C. (Everett H. Erlick, New York City, of counsel), for amicus curiae American Broadcasting Companies, Inc.

Erwin G. Krasnow, Brenda L. Fox, Washington, D. C., for amicus curiae National Ass'n of Broadcasters.

Irving R. Segal, Eugene A. Spector, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Corydon B. Dunham, New York City, of counsel), for amicus curiae National Broadcasting Co., Inc.

Harry M. Plotkin, Theodore D. Frank, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C. (Norman M. Sinel, Washington, D. C., of counsel), for amicus curiae Public Broadcasting Service.

J. Laurent Scharff, Pierson, Ball & Dowd, Washington, D. C., for amicus curiae Radio Television News Directors Assn.

Werner K. Hartenberger, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, John E. Ingle, Counsel, Robert S. Foosaner, Counsel, F. C. C., Washington, D. C.,

for amicus curiae, Federal Communications Commission.

Before KAUFMAN, Chief Judge, and OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

In 1969, three candidates campaigned for election to the office of Mayor of the City of Stamford, Connecticut: Julius Wilensky, a Republican; Paul Kuczo, a Democrat; and John J. P. Nocerino, of the Fusion Party. All three ran paid political broadcasts on the only radio stations licensed in Stamford, WSTC and WSTC(FM).

Both stations were then operated by the Western Connecticut Broadcasting Company ("Western") pursuant to licenses from the Federal Communications Commission ("FCC"). Since 1946, Kingsley Gillespie has been the President, Treasurer and a director of Western; he owns in excess of 50 percent of its stock. At the time of the 1969 elections, Julian Schwartz was the general manager of Western's stations, a post he had held since 1947. Prior to 1969 Schwartz had a policy, which was unevenly enforced and of which Gillespie was aware, of requiring political candidates to submit the scripts of their campaign messages prior to broadcast in order to ensure that the material was in good taste.

During the 1969 campaign, Schwartz considered it unnecessary to review Wilensky's scripts, but he reviewed all of the scripts submitted by Kuczo and Nocerino. On several occasions, Schwartz ordered the excision of material which he considered to be in bad taste.

Wilensky won the election. Sometime after November 4, 1969, the FCC, acting on the basis of a complaint from Nocerino, directed Western to show cause why its licenses should not be revoked on the ground that it had violated § 315(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 315(a), which prohibits censorship of political broadcasts. Hearings were held in late 1971, and on August 4, 1972, Administrative Law Judge Isadore A. Honig released an initial decision in which he concluded that, although a license revocation was unwarranted, the maximum monetary forfeiture of $10,000 should be assessed. *Western Connecticut Broadcasting Co.*, 43 F.C.C.2d 752 (1972). The Commission affirmed. 43 F.C.C.2d 730 (1973). While this revocation proceeding was pending, Western's licenses came up for renewal, and a competitor, Radio Stamford, Inc., applied for the AM broadcast license. The FCC ordered a comparative hearing, 44 F.C.C.2d 673 (1973), and in an initial decision released January 14, 1977, an Administrative Law Judge, relying in large part on Western's § 315(a) violations, awarded the license to Radio Stamford. F.C.C. 77D–3. This decision is presently under review by the Commission.

On October 20, 1972, nearly three years after the 1969 election, Kuczo and Nocerino filed their complaint in the instant action. They sought damages on the ground that the censorship of their campaign messages violated their First Amendment rights. They named Western, Gillespie and Schwartz as defendants. The defendants moved for summary judgment, and argued, inter alia, that their acts constituted private, not governmental, action and therefore were not subject to the First Amendment. This argument was rejected and the motion was denied. *Kuczo v. Western Connecticut Broadcasting Co.*, 424 F.Supp. 1325 (D.Conn.1976).[1] We reverse.

---

1. After rejecting the defendants' argument on the governmental action issue, the court below considered whether there is a private damage cause of action under the First Amendment, and it held that there is. 424 F.Supp. at 1329 *citing, Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment). Having found governmental action, as well as jurisdiction of the First Amendment claim under 28 U.S.C. § 1331, the court denied the motion for summa-

ry judgment. Ordinarily, this non-final order would not be appealable. *Cf. E.E.O.C. v. American Express Co.*, 558 F.2d 102 (1977) (denial of motion to dismiss). However, the court certified, pursuant to 28 U.S.C. § 1292(b), the question whether the defendants' acts constituted federal action. On February 24, 1977, we granted leave to appeal. The only issue properly before us, therefore, is the governmental action issue.

The constitutional guarantees of freedom of speech and of the press offer protection against state or federal governmental action only; they neither apply to nor restrict private action. *See C.B.S., Inc. v. Democratic National Comm.,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). We must therefore decide whether the action of Western and its agents was governmental or private.

Most lower courts that have considered the question whether broadcasters are instrumentalities of government for First Amendment purposes have concluded that they are not. *Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 183 F.2d 497, 501 (1st Cir. 1950) (*per curiam*), adopting the opinion of the district court, 87 F.Supp. 822, 825 (D.Mass.1949); *McIntire v. Wm. Penn Broadcasting Co. of Philadelphia,* 151 F.2d 597, 601 (3d Cir. 1945), cert. denied, 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); *Moro v. Telemundo Incorporado,* 387 F.Supp. 920, 925 (D.P.R.1974); *Smothers v. C.B.S., Inc.,* 351 F.Supp. 622, 627 (C.D.Cal.1972); *Post v. Payton,* 323 F.Supp. 799, 803–04 (E.D.N.Y.1971). We are aware of only two cases in which it has been suggested that a broadcaster's actions could be treated as governmental action. *Business Executives' Move for Vietnam Peace v. F.C.C.,* 146 U.S.App.D.C. 181, 450 F.2d 642 (1971) (Wright & Robinson, JJ., with McGowan, J., dissenting), rev'd sub nom. *C.B.S., Inc. v. Democratic National Committee, supra; Writers Guild of America, West, Inc. v. F.C.C.,* 423 F.Supp. 1064 (C.D.Cal.1976).

In *Business Executives',* it was held that a broadcaster's refusal to sell advertising time for editorial purposes was subject to the First Amendment. The major basis for the finding of governmental action was the fact that the FCC had specifically "given its imprimatur to the flat ban on editorial advertising." *Id.* at 652. The Supreme Court reversed, *C.B.S., supra* but the Justices did not agree on the governmental action issue. The Chief Justice and Justices Douglas, Stewart and Rehnquist expressed the view that there was no governmental action. Justices White, Blackmun and Powell considered it unnecessary to decide the governmental action issue, and they concurred on another basis. Justice Brennan, with whom Justice Marshall concurred, dissented, taking the view that

the public nature of the airwaves, the governmentally created preferred status of broadcast licensees, the pervasive federal regulation of broadcast programming, *and the Commission's specific approval of the challenged broadcaster policy* combine in this case to bring the promulgation and enforcement of that policy within the orbit of constitutional imperatives.

*Id.,* 412 U.S. at 173, 93 S.Ct. at 2121 (Brennan, J., dissenting) (emphasis added). Thus, Justices Brennan and Marshall in dissent emphasized, as had Judges Wright and Robinson in the Court of Appeals, the important nature of the FCC's specific approval of the broadcaster's action. *Compare id.* at 177–78, 93 S.Ct. 2080 *with Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176–77, 92 S.Ct. 1973, 32 L.Ed.2d 627 (1972) ("However detailed . . . regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination."), *and Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) ("Approval by a state utility commission . . . where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into 'state action.' ").

The only other case to hold that a private broadcaster could be treated as an instrumentality of government is *Writers Guild, supra,* upon which the court below relied. In that case it was held that private television broadcasters were liable for a violation of the First Amendment because they had breached their "duty as public trustees and fiduciaries to resist government intrusions into the programming domain," 423 F.Supp. at 1143, by succumbing to FCC pressure

and adopting the so-called "family hour" viewing policy. The court made it quite clear that the basis for its finding of governmental action was the exertion of significant pressure by the FCC to adopt the policy. *Id.* at 1140–43. The court expressly stated that mere governmental encouragement of the policy would be insufficient to justify a finding of governmental action. *Id.* at 1135–40.

■ In concluding, as we do, that Western's action was not governmental, our holding is a narrow one. This Court need not agree completely with the plurality in *C.B.S., Inc. v. Democratic National Committee* ; we also need not second-guess those Justices who expressed no view on the issue. The Justices who found governmental action in *C.B.S.* did so primarily because the FCC had specifically approved the challenged conduct. 412 U.S. at 177–78, 93 S.Ct. 2080. Here the facts are quite different. Section 315(a) of the Communications Act specifically prohibits the conduct here engaged in, and the FCC has prescribed appropriate rules for the enforcement of the statute. Western's violation of the statute resulted in the imposition, by the FCC, of a forfeiture of $10,000. The FCC considered this § 315(a) violation in deciding not to renew Western's AM station license and to award it instead to a competitor. On these facts, it is difficult to imagine what more the government might have done to disavow or prevent the censorship engaged in by Western. Even under the analysis used by the dissent in *C.B.S.* and the district court in *Writers Guild,* we would conclude that Western's action was private and therefore not subject to the First Amendment.[2]

The decision of the district court is reversed, and the case is remanded with instructions to enter summary judgment in favor of the defendants.

---

2. In finding governmental action, the court below emphasized Western's government-protected monopoly of the airwaves in Stamford. The existence of a monopoly is undoubtedly relevant, but it is insufficient, standing alone, to support a finding of governmental action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351–52, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In this case, the significance of the monopoly factor is limited, for it is clear that the broadcast frequencies of many stations oth-

er than Western's, both AM and FM, may be heard by Stamford listeners and are available to political candidates. Even if there were a true monopoly, that would be a matter primarily for the FCC and future licensing procedures. *See Morrisseau v. Mt. Mansfield Television, Inc.,* 380 F.Supp. 512, 517 (D.Vt.1974). In any event, the monopoly factor cannot be deemed controlling where, as here, the government has specifically disapproved the challenged conduct.