**CENTRAL NEW YORK RIGHT TO LIFE FEDERATION, John Arena, President, Jeanette Sunderlin, 3rd Vice President, Plaintiffs,**

v.

**RADIO STATION W. I. B. X., Buck Buckley, Talk Show Host, "At Ur Service", Defendants.**

No. 78–CV–556.

United States District Court, N. D. New York.

March 19, 1979.

John Arena and Jeanette Sunderlin, pro se, for plaintiffs.

Capecelatro, Del Buono, Vaughan & Compson, P. C., Utica, N. Y., for defendants.

### MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

The Central New York Right to Life Federation and several of its members have commenced this civil rights action against an upstate New York radio station and its "talk show" host, seeking to recover $750,-000 for violations of the "fairness doctrine"

---

and their first amendment rights.[1] The defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. In the alternative, they seek an Order directing the plaintiffs to plead their causes of action with greater precision.

■ Unfortunately, none of the parties have seriously examined the issue of subject matter jurisdiction. Since the Court's lack of subject matter jurisdiction is a nonwaivable defect, it must be considered sua sponte even if it has not been put in issue by the parties. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 68, 98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978); *Gresham v. Chambers*, 501 F.2d 687, 690 (2d Cir. 1974). As a result, subject matter jurisdiction shall be the first topic considered in this opinion, following a brief recitation of the underlying facts and a general overview of the fairness doctrine.

In a somewhat rambling and disjointed fashion, the Complaint explains that the plaintiffs and their organization had planned a regional conference which was scheduled to be held in the Utica Memorial Auditorium on September 16, 1978. Shortly before this conference was held, the defendants broadcast several "talk shows" during which issues relating to abortion were discussed. The gravamen of the Complaint is that during the course of these discussions, Buckley engaged in personal attacks against the plaintiffs and Anita Bryant, with the radio station thereafter refusing to offer reply time or provide tapes of the allegedly offensive broadcasts. Accordingly, the plaintiffs contend that the defendants have violated § 315 of the Federal Communications Act, that the defendants have conspired to violate their civil rights, that their conduct offends the federal common law, and that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

At this point, an explanatory preface may assist the parties in realistically evaluating their rights and obligations. To begin with, the fairness doctrine is codified in § 315 of the Federal Communications Act. It imposes a dual obligation upon the broadcast licensee. First, he must devote a substantial portion of available time to the discussion of controversial issues of public importance.[2] Second, when he presents such an issue, the licensee has a further duty to present responsible conflicting views.[3]

As an extension of the fairness doctrine, the F.C.C. has developed the personal attack rule, which, in its present form, provides:

(a) When, during the presentation of views on a controversial issue of public importance, an attack is made upon the honesty, character, integrity or like personal qualities of an identified person or group, the licensee shall, within a reasonable time and in no event later than one week after the attack, transmit to the person or group attacked (1) notification of the date, time and identification of the broadcast; (2) a script or tape (or an accurate summary if script or tape is not available) of the attack; and (3) an offer of a reasonable opportunity to respond over the licensee's facilities.

47 C.F.R. § 73.123.[4] However, while the personal attack rule is an outgrowth of the fairness doctrine, it has unique distinguish-

---

1. From the pleadings, the Court is unable to determine whether the Central New York Right To Life Federation is an unincorporated association, a not-for-profit corporation, or a corporation. However, because the Court lacks subject matter jurisdiction, it is unnecessary to consider whether the Federation may appear without independent counsel. See, *United States v. 9.19 Acres of Land*, 416 F.2d 1244 (6th Cir. 1969); *Simbraw, Inc. v. United States*, 367 F.2d 373 (3d Cir. 1966).

2. *In the Matter of Editorializing By Broadcast Licensees*, 13 F.C.C. 1246, 1249 (1949).

3. This duty extends to making free time available if those holding responsible conflicting views are unable to purchase airtime. *Cullman Broadcasting Co.*, 40 F.C.C. 576, 577 (1963).

4. Subsection (b) contains a number of exceptions to the rule, none of which are apparently germane to the present case. Subsection (c) contains the so-called political editorial rule which is also inapplicable to the case at bar.

ing characteristics which, in this case, warrant further discussion.

The fairness doctrine imposes a general duty that licensees provide adequate coverage of important public issues and that such coverage reflect the major viewpoints held on the topic in dispute. *Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 111, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). There is, however, no requirement that the opposing views be aired in the same program or even in the same series. It is enough that they simply find a place in the licensee's overall programming, with the format of the presentation, including the choice of spokesmen, being left to the good faith and reasonable discretion of the broadcaster. Fairness Report 48 F.C.C.2d 1, 8 (1974).

The personal attack rule, on the other hand, imposes a more specific duty. In particular, it requires the licensee to notify the person attacked within seven days of the broadcast, to provide a script or tape of the attack, and to take the initiative of offering a reasonable opportunity for reply over the licensee's facilities. This offer must be extended directly to the person or group attacked, and unlike the fairness doctrine generally, the licensee maintains little control over the format or spokesperson of the respondent.[5] Lastly, it is important to recognize that because the personal attack rule does not authorize the use of broadcast time to vindicate private reputation, rather its destiny is to foster the debate of public issues. As a result, not all personal attacks entitle an individual or group to reply time. *Straus Communications, Inc. v. FCC,* 174 U.S.App.D.C. 149, 156, 530 F.2d 1001, 1008 (1976).

A judicious reading of the Complaint discloses that the plaintiffs are primarily aggrieved by the defendants' alleged violation of Federal Communications Act § 315 and the personal attack rule. The plaintiffs, however, wish to overlook the fact that enforcement of section 315, and vindication of the important public interests which it serves, is vested in the Federal Communications Commission. *Gordon v. National Broadcasting Co.,* 287 F.Supp. 452, 455 (S.D. N.Y.1968). Under its regulations and procedures, an aggrieved individual may, in a proper case, obtain relief from this administrative agency. The sole function of the Courts in enforcing the fairness doctrine is to review final orders of the F.C.C. in accordance with the statutory scheme. 47 U.S.C. §§ 401, 402; *McIntire v. Wm. Penn Broadcasting Co.,* 151 F.2d 597, 600 (3d Cir. 1945), *cert. den.,* 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); *Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 87 F.Supp. 822, 825 *aff'd* 183 F.2d 497 (1st Cir. 1950); *Morrisseau v. Mount Mansfield Television Inc.,* 380 F.Supp. 512, 515 (D.Vt.1974); *Ackerman v. Columbia Broadcasting System,* 301 F.Supp. 628, 631 (S.D. N.Y.1969). The plaintiffs are apparently familiar with these rules as their Complaint reveals that prior to commencing this action they initiated an F.C.C. proceeding to prosecute their claims. For this reason, they must concede their failure to exhaust the applicable administrative remedies. Furthermore, the Courts have consistently held that § 315 of the Federal Communications Act does not give private parties a cause of action for alleged violations of its provisions. *Scripps-Howard Radio, Inc. v. F. C. C.,* 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *Massachusetts Universalist Convention v. Hildreth, supra; Daly v. West Central Broadcasting Co.,* 309 F.2d 83, 85 (7th Cir. 1962); *Gordon v. National Broadcasting Co.,* 287 F.Supp. at 455. It is therefore clear that judicial intervention, if there is to be any, must await the outcome of the F.C.C. proceeding.

In addition to stating a claim under the personal attack rule, the Complaint also asserts that the defendants' action has abridged the plaintiffs' first, fifth, seventh, and fourteenth amendment rights. Relief is sought under 42 U.S.C. §§ 1983, 1985, and

---

5. It does retain some latitude to negotiate concerning these terms to the extent that they relate to the reasonableness of the reply opportunity. *Straus Communications, Inc. v. F. C. C.,* 174 U.S.App.D.C. 149, 156, 530 F.2d 1001, 1008 (1976).

1986, subject matter jurisdiction is predicated upon 28 U.S.C. § 1343, and 28 U.S.C. § 1331 is employed in an effort to obtain general federal question jurisdiction. The Court is, nonetheless, powerless to entertain this action.

Reported decisions demonstrate that the plaintiffs' claim is not particularly unique. For example, the plaintiffs in *Kuczo v. Western Connecticut Broadcasting Co.,* 566 F.2d 384 (2d Cir. 1977) were unsuccessful mayoral candidates whose campaign announcements were reviewed by the defendant for "poor taste" prior to transmission. Messages of the successful mayoral candidate had not been censored and the plaintiffs sought to recover monetary losses allegedly sustained as a result of the censorship, an alleged conspiracy to violate their civil rights, violations of their constitutional rights, and violations of the Federal Communications Act. Judge Lumbard, sitting by designation for the District Court, found no conspiracy within the meaning of 42 U.S.C. § 1985 and insufficient state action to support a claim under 42 U.S.C. § 1983. He did, however, deny the defendants' motion for summary judgment, finding that the plaintiffs' Complaint stated a cause of action under 28 U.S.C. § 1331.

The Second Circuit Court of Appeals did not agree. First, the Panel observed that the constitutional guarantees of free speech and freedom of the press offered protection only against governmental action. 566 F.2d at 387. Then, while noting a divergence of authority concerning whether F.C.C. regulation amounted to sufficient state action to create a constitutional claim, the Court concluded that public broadcasting was not imbued with state action unless the F.C.C. had put its own weight behind the challenged conduct. Since the Federal Communications Commission had not sanctioned the type of censorship carried out by the defendants, the Order of the District Court was reversed. Consequently, in this Circuit, it is now clear that F.C.C. approval of the challenged conduct is the key factor to be considered in determining whether a private party may assert a constitutional cause of action against a broadcast licensee as a result of its programming practices.

The defendants in *Kuczo,* like the defendants in this action, can scarcely claim F.C.C. approval of the contested practices. If anything, the conduct of the defendants is expressly condemned by the personal attack rule. The Court is therefore unable to find the requisite state action upon which its subject matter jurisdiction ultimately depends. Furthermore, it is as clear in this case as it was in *Kuczo, supra,* that the plaintiffs' conspiracy allegations fail to state a claim upon which relief can be granted. 424 F.Supp. at 1328, see also, *Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir. 1977); *Hahn v. Sargeant,* 523 F.2d 461, *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Accordingly, the plaintiffs' Complaint shall be dismissed.

It is so ordered.