**Nick BELLUSO, Plaintiff–Appellant,**

v.

**TURNER COMMUNICATIONS CORPORATION,**
**Defendant–Appellee.**

No. 79–1799.

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1980.

Lloyd E. N. Hall, Atlanta, Ga., for plaintiff–appellant.

J. Kirk Quillian, Alan E. Lubel, Atlanta, Ga., for defendant–appellee.

Before RONEY, HILL and FAY, Circuit Judges.

RONEY, Circuit Judge:

This appeal presents two issues which have not previously been addressed by this Court. We are asked to decide, *first,* whether a gubernatorial candidate who is denied the use of broadcast facilities in violation of the equal opportunity provisions of the Federal Communications Act (Act), 47 U.S.C.A. § 315(a), has an implied private cause of action for damages under the statute and, *second,* whether such a denial of access to the broadcast media constitutes an actionable violation of the First Amendment. Because both inquiries must be answered negatively, we affirm the district court's dismissal of the complaint.

### FACTS

Because the action was dismissed for failure to state a claim upon which relief can be granted, the facts as alleged in the complaint must be accepted as true on this appeal. Plaintiff Belluso was a legally qualified candidate for governor of Georgia in the 1978 Democratic primary. He contacted television station WTCG–TV in Atlanta seeking commercial broadcast time for political advertising before the primary. Although he did not so allege, we assume the facts would disclose that other legally qualified candidates for governor were sold broadcast time by this commercial station. Belluso informed the station, however, that he planned to use hypnotic techniques in his advertisement.

WTCG, concerned about the use of such techniques, sought to obtain from the Federal Communications Commission (Commission) an exemption from any obligation to provide the airtime requested. The Commission refused to rule on the question, indicating the station would have to make the initial decision whether to allow Belluso to use its broadcast facilities. The station determined not to air the proposed commercial. Its decision received considerable local and national media attention and was followed by several other television stations.

Without pursuing any administrative remedies or equitable relief, Belluso, alleging injury to his candidacy and reputation, filed an action for damages against defendant Turner Communications Corporation, the licensee of station WTCG, for violation of 47 U.S.C.A. § 315(a) and the First Amendment. On defendant's motion, the district court dismissed the suit, holding that section 315(a) creates no private cause of action for damages and that no governmental action was involved which would give rise to a First Amendment violation.

### Action Based on Statute

Section 315(a) essentially requires that all qualified candidates for public office shall be given equal opportunity for use of broadcasting facilities. The statute provides in relevant part:

If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station: *Provided,* That such licensee shall have no power of censorship over the material broadcast under the provisions of this section. No obligation is imposed under this subsection upon any

licensee to allow the use of its station by any such candidate.

47 U.S.C.A. § 315(a).

On the motion to dismiss the complaint, the court must assume without deciding, first, that defendant was required under the statute to air plaintiff's political advertisement; second, that the use of hypnotic techniques did not take the advertisement outside the protection of the statute; and, third, that plaintiff could prove monetary damages with the requisite degree of certainty. Because Belluso has only sought damages in this suit, we do not decide whether, assuming a violation, a candidate could obtain equitable relief from the courts and, if so, whether exhaustion of administrative remedies would be required as a prerequisite to relief.

The Federal Communications Act does not expressly authorize suits to recover damages for violations of section 315(a) by broadcast licensees. The question, then, is whether such a private damages remedy can be implied under the Act. To our knowledge, the majority of courts to consider the question have held that no such remedy can be inferred from the Act. *See Daly v. Columbia Broadcasting System, Inc.*, 309 F.2d 83 (7th Cir. 1962); *Smothers v. Columbia Broadcasting System, Inc.*, 351 F.Supp. 622 (D.C.Cal.1972); *Ackerman v. Columbia Broadcasting System, Inc.*, 301 F.Supp. 628 (S.D.N.Y.1969); *Gordon v. National Broadcasting Co.*, 287 F.Supp. 452 (S.D.N.Y.1968); *but compare Reitmeister v. Reitmeister*, 162 F.2d 691 (2d Cir. 1947) (implying a private cause of action for unauthorized publication of a telephone conversation in violation of 47 U.S.C.A. § 605); *Lorentz v. Westinghouse Electric Corp.*, 472 F.Supp. 946 (W.D.Pa.1979) (implying a private cause of action for violation of the personal attack rule, 47 C.F.R. § 73.123). The case is one of first impression in this Circuit.

In determining whether plaintiff has an implied private cause of action, we are guided by a series of Supreme Court cases which outline the role of the courts in inferring private remedies under federal statutes. The collective teaching of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), is that the task before the Court is a limited one. The Court is not to determine whether allowing a private remedy to redress a statutory violation would be practical or desirable, but only to determine, as a matter of statutory construction, whether Congress intended at the time it enacted the statute to create the private remedy asserted. *Cannon*, 441 U.S. at 688, 99 S.Ct. at 1953; *Transamerica Mortgage Advisors, Inc.*, 444 U.S. at 15–16, 100 S.Ct. at 245; *Rogers v. Frito–Lay, Inc.*, 611 F.2d 1074, 1078 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). It is assumed without examination, in light of a broadcaster's First Amendment rights, that Congress could have provided a damage remedy if it had chosen to do so.

▮ The basis for inferring a private right of action from a statute not expressly providing one is a finding by the court that Congress intended to create such a remedy. *Touche Ross & Co.*, 442 U.S. at 568, 99 S.Ct. at 2485; *United States v. Capeletti Brothers, Inc.*, 621 F.2d 1309, 1312 (5th Cir. 1980). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon*, 441 U.S. at 688, 99 S.Ct. at 1953.

▮ In *Cort v. Ash*, the Supreme Court outlined four considerations which are relevant in determining whether a private remedy is implicit in a statute not explicitly providing one. These are (1) whether the statute creates a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create or deny such a remedy; (3) whether it would be consistent with the underlying purposes of the legislative scheme to imply such a remedy for the

plaintiff; and (4) whether the cause of action is one traditionally relegated to state law. 422 U.S. at 78, 95 S.Ct. at 2088. Subsequent cases make clear that these factors are not to be applied in a rigid or mechanical manner. They are merely guides which may shed light on what Congress intended. In any given case one or more factors may point in favor of implication of a private cause of action, yet another may be so persuasive of legislative intent to deny such a remedy as to be dispositive. *See Smith v. Cotton Brothers Baking Co.,* 609 F.2d 738 (5th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

With these considerations in mind, we begin our analysis with the language of the statute in question. An examination of this language provides answers regarding two of the factors outlined in *Cort.* Section 315(a) imposes certain obligations on broadcast licensees as part of a comprehensive scheme regulating the broadcast industry. The field is pre–empted by federal law and the cause of action clearly is not one traditionally relegated to state law. Moreover, although the Federal Communications Act was enacted primarily for the protection of the public interest in telecommunications, and not to create new private rights, *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1942), the obvious thrust of section 315(a) is to protect bona fide candidates for public office from discrimination and unfair advantage in the use of broadcast facilities. *Flory v. FCC,* 528 F.2d 124 (7th Cir. 1975); *Paulsen v. FCC,* 491 F.2d 887 (9th Cir. 1974). By imposing an affirmative duty on broadcast licensees to afford equal opportunities to all qualified candidates in the use of broadcast facilities, the statute can be read as conferring a federal right in favor of candidates in plaintiff's position.

While the existence of a federal *right* in favor of the plaintiff is some evidence of congressional intent, it normally is not conclusive evidence that Congress intended to provide the specific *remedy* asserted by the plaintiff to vindicate that right. Therefore, it is necessary to look for other clues of legislative intent. Here, as in most cases

where the statute neither expressly creates nor negates a private cause of action, the legislative history of section 315(a) is silent on the question. An examination of the overall legislative scheme of which section 315(a) is a part, however, offers persuasive evidence that Congress did not intend section 315(a) to be enforced through a private action for damages, and that implication of such a remedy would be inconsistent with the purpose of the Act to repose responsibility for its implementation and enforcement in the Federal Communications Commission.

The purpose of the 1934 Act "was to protect the public interest in communications," *Scripps–Howard Radio, Inc.,* 316 U.S. at 14, 62 S.Ct. at 882, by formulating "a unified and comprehensive regulatory system for the industry," *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940) (footnote omitted). To achieve these goals, Congress created the Federal Communications Commission and granted it broad regulatory authority. 47 U.S.C.A. § 151. The Commission was empowered to prescribe rules and regulations in furtherance of the Act generally, 47 U.S.C.A. §§ 154(i), 303(f), and of section 315 in particular, 47 U.S.C.A. § 315(c), and to enforce compliance therewith through various administrative sanctions, 47 U.S.C.A. § 312. The role of the courts was limited to review and enforcement of Commission decisions and orders under an abuse of discretion standard, *FCC v. RCA Communications, Inc.,* 346 U.S. 86, 91, 73 S.Ct. 998, 1002, 97 L.Ed. 1470 (1953); issuance of writs of mandamus to compel compliance with the Act upon application of the Attorney General at the request of the Commission; and prosecution for criminal violations of the Act. 47 U.S.C.A. §§ 401 and 402. *See* Act of June 19, 1934, c. 652, Titles I, III and IV, §§ 1, 4(i), 303(f), 315, 401, 402, 48 Stat. 1064, 1066, 1082, 1084, 1092, 1093. Though the Act has been amended on several occasions since 1934, these amendments have in no way diminished either the central role of the Commission in enforcing the Act or its powers thereunder.

The Commission is empowered to issue a cease and desist order from any licensee violation of section 315(a). 47 U.S.C.A. § 312(b). The Commission, the United States Attorney General, or "any person injured thereby" may seek enforcement of the Commission order in federal court. 47 U.S.C.A. § 401(b). Sanctions which can be imposed by the Commission for violation of the Act include revocation of the station's license, 47 U.S.C.A. § 312(a), denial of license renewal, 47 U.S.C.A. § 307, and criminal penalties for willful and knowing violations, 47 U.S.C.A. §§ 501 and 502.

It is apparent from an examination of the 1934 Act that enforcement of the statute and vindication of the public interest are vested in the Federal Communications Commission. *See Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 183 F.2d 497 (1st Cir. 1950); *McIntire v. Wm. Penn Broadcasting Co.,* 151 F.2d 597, 600 (3d Cir. 1945), *cert. denied,* 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); *Ackerman v. Columbia Broadcasting System, Inc.,* 301 F.Supp. 628, 631 (D.C.1968).

Pursuant to its statutory authority, the Commission has promulgated rules and regulations which provide a candidate aggrieved by a violation of section 315(a) an administrative remedy. In addition to the general complaint procedures, 47 C.F.R. § 1.1 (1979), the Commission has published specific procedures for political candidates seeking to enforce section 315. *Use of Broadcast Facilities by Candidates for Public Office,* 24 F.C.C.2d 834 (1964). These complaints are given priority consideration by the Commission.

The existence of this pervasive statutory and administrative scheme is strong evidence that Congress intended the administrative remedy to be exclusive. Likewise, under the third criterion of *Cort v. Ash,* creation of a private cause of action would be inconsistent with the clear legislative intent to centralize enforcement of the Act in the expert agency. Applying the maxim of statutory construction *expressio unius est exclusio alterius,* the Supreme Court has admonished "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *see also Transamerica Mortgage Advisors, Inc.,* 444 U.S. at 19, 100 S.Ct. at 247 ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"); *Rogers,* 611 F.2d at 1084–85. This is a case in which it is proper to heed such advice.

Plaintiff nevertheless argues that section 315(a) should be treated differently from the other provisions of the Act because it is designed to protect a special class of persons over and above the Act's protection of the public at large. Plaintiff insists that because of the short period of time between when a person becomes a qualified candidate for office and when the election occurs, Commission intervention alone is not adequate to protect candidates and effectuate the purposes of section 315(a). Although we assume that Congress could provide a damage remedy if it chose to do so, it is not appropriate for this Court to provide such a remedy where Congress has not chosen to do so, even if it would better effectuate the Act. Furthermore, the plaintiff in this case has never sought any type of relief from the Commission, nor has he alleged that he would not have been able to obtain relief from the Commission before the election if he had filed a complaint. The premise of his argument that a damage remedy is necessary to protect candidates against violations of section 315(a) therefore fails.

■ We affirm the holding of the district court that there is no private cause of action for damages to redress violations of section 315(a).

### Action Based on First Amendment

Plaintiff argues that the defendant's refusal to grant him uncensored airtime for political advertising violated his First Amendment rights. Both parties have vig-

orously debated the questions of whether denial of access to broadcast facilities by a licensee is governmental action for purposes of a First Amendment challenge, and whether, assuming a First Amendment violation, the plaintiff can assert a private cause of action for damages under the Constitution. Upon careful review of the relevant authorities, we hold, *first*, that the action of the broadcast licensee in this case, which was neither required nor approved by any governmental body, was not governmental action within the meaning of the First Amendment, and *second*, that even if it were governmental action, plaintiff has established no First Amendment right of access to the broadcast media.

*Governmental Action*

■ The First Amendment is a restraint on Government, not on private persons. *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). Although the rule is easily stated, the determination of what separates "private" action from "state" action is much more difficult. In the context of the Fourteenth Amendment, the Supreme Court has said generally that, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action," and that "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations," *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). But the Court is aware that "generalizations do not decide concrete cases." Only by sifting facts and weighing circumstances can a determination be made that governmental action exists in a particular case. *Id.* at 299–300, 86 S.Ct. at 488–489.

To our knowledge, only one case, *Kuzco v. Western Connecticut Broadcasting Co.*, 566 F.2d 384 (2d Cir. 1977), has addressed the question of governmental action in the context of a broadcaster's violation of section 315(a). In that case, a radio station censored the material broadcast by two candidates under the "equal time" provisions. On the basis of a complaint filed by one of the candidates, the Federal Communications Commission found the station had violated section 315(a). The two candidates subsequently brought an action for damages against the station for violation of their First Amendment rights. The Second Circuit reversed and remanded with instructions to grant the licensee's motion for summary judgment on the ground that the conduct of the radio station was private and not governmental action.

In reaching this decision, the Court first noted that most lower courts which have considered the question whether broadcasters are instrumentalities of the Government for First Amendment purposes have concluded they are not, citing *Massachusetts Universalist Convention v. Hildreth & Rogers Co.*, 183 F.2d 497, 501 (1st Cir. 1950) (*per curiam*), *adopting the opinion of the district court*, 87 F.Supp. 822, 825 (D.Mass.1949); *McIntire v. Wm. Penn Broadcasting Co. of Philadelphia*, 151 F.2d 597, 601 (3d Cir. 1945), *cert. denied*, 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); *Moro v. Telemundo Incorporado*, 387 F.Supp. 920, 925 (D.P.R.1974); *Smothers v. C.B.S., Inc.*, 351 F.Supp. 622, 627 (C.D.Cal.1972); *Post v. Payton*, 323 F.Supp. 799, 803–04 (E.D.N.Y. 1971). 566 F.2d at 387. The court in fact found only two cases which might suggest that a broadcast licensee's action can be treated as governmental action. First, in *Business Executives' Move for Vietnam Peace v. FCC*, 146 U.S.App.D.C. 181, 450 F.2d 642 (1971), *rev'd sub nom. Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973), the Court of Appeals held that a broadcaster's ban on editorial advertising violated the First Amendment. The primary reason for finding governmental action was the fact that the Federal Communications Commission had expressly validated the broadcaster's policy. 450 F.2d at 652. The Supreme Court reversed, with a majority holding that the First Amendment does not guaran-

tee every individual a right of access to the broadcast media. The Justices were unable to agree on the governmental action issue, however. The Chief Justice and Justices Rehnquist and Stewart, in Part III of the opinion, 412 U.S. at 114–21, 93 S.Ct. at 2092–96 ( see also Justice Stewart's concurring opinion, id. at 132–46, 93 S.Ct. at 2101–08), and Justice Douglas, id. at 148–70, 93 S.Ct. at 2109–20 (concurring in the judgment), expressed the view that there was no governmental action. Justice White, id. at 146–47, 93 S.Ct. at 2108 (concurring), and Justices Blackmun and Powell, id. at 147–48, 93 S.Ct. at 2108–09 (concurring), considered it unnecessary to decide the governmental action issue in light of the substantive holding under the First Amendment. In their dissent, Justices Brennan and Marshall would have found governmental action in the case, emphasizing the Commission's specific approval of the broadcaster's action. Id. at 170–81, 93 S.Ct. at 2120–26 (Brennan, J., dissenting).

In the second case, a finding of governmental action was based on the Commission's exertion of significant pressure on the broadcasters to adopt the contested policy. Writers Guild of America, West, Inc. v. FCC, 423 F.Supp. 1064 (D.C.Cal.1976). It is noteworthy that since the decision in Kuzco, the Ninth Circuit has vacated and remanded the Writers Guild case without deciding the governmental action issue on the ground that the controversy is properly within the primary jurisdiction of the Commission. Writers Guild of America, West, Inc. v. American Broadcasting Co., 609 F.2d 355 (9th Cir. 1979), cert. denied, —— U.S. ——, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980).

The Kuzco court easily distinguished these two cases from the one before it. In Kuzco, there was no specific governmental approval of the broadcaster's action, as in Columbia Broadcasting, nor any evidence of governmental pressure exerted on the broadcaster to adopt the policy in question, as in Writers Guild. To the contrary, the broadcaster's action in Kuzco was specifically prohibited by statute and the Commission had imposed a fine upon the station for its violation of the statute and had considered the violation in deciding not to renew the station's license. 566 F.2d at 387–88.

The Second Circuit's persuasive reasoning in Kuzco applies equally to this case. The existence of regulations does not automatically transform a regulated entity into a Government instrumentality. See, e. g., Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In the area of broadcasting, while a broadcaster can operate only with a license from the Government and is required to operate in the public interest, it retains significant discretion in determining how that public interest requirement will be met. Unlike the all–encompassing regulation of the District of Columbia transportation utility in Public Utilities Commission v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), the intent of Congress in enacting the Communications Act of 1934 was not to exert total governmental control over the broadcast industry, or to make broadcasters common carriers, see 47 U.S.C.A. § 153(h), but was to permit private broadcasting to develop the widest possible journalistic freedom consistent with its obligation to the public. See Columbia Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. at 110, 93 S.Ct. at 2090. Consistent with that goal, broadcasters exercise wide discretion over the content and format of their programming. These considerations counsel that where a broadcast licensee acts in a manner inconsistent with the requirements of the Act, and where those acts are in no way sanctioned by a governmental body such as the Federal Communications Commission, they are private and not governmental acts for purposes of First Amendment analysis.

■ Here, as in Kuzco, the statute expressly prohibits a denial of equal opportunity to air political advertisements. The Commission refused to rule that the broadcaster was exempt from the provisions of section 315(a) and in no way intimated approval of the station's refusal to air the proposed commercial. The fact that the Commission did not order the station to air

the message at the time the exemption was requested is no evidence that the Commission would have or did approve of the station's decision to refuse the commercial. First, since no act that could be a violation of section 315(a) had occurred at the time the station requested the ruling, the Commission had no basis for ordering the station to cease and desist from violating the Act. Second, because plaintiff did not attempt to redress the violation through the Commission after it occurred, there is simply no way to know whether the Commission would or would not have upheld the broadcaster's decision. In light of plaintiff's failure to seek compliance with the Act before the Commission, that body's silence cannot be turned into governmental action for First Amendment purposes.

Plaintiff argues that although a broadcaster acting in an area in which journalistic discretion may be exercised is engaging in private conduct, when he is acting in an area in which he has no discretion, his action becomes governmental action. Since a broadcaster has no choice under section 315(a) but to accept advertising from any legally qualified candidate for public office if it accepts any such advertising, and has no power to censor any message broadcast under the provision, plaintiff argues his decision not to air a particular message in violation of section 315(a) must be considered governmental action for purposes of a First Amendment challenge.

While plaintiff's argument may have some initial appeal, it cannot withstand close scrutiny. Plaintiff's argument seems to derive from the notion that broadcasters are in fact "agents" of the Government except insofar as they act in areas which Congress left to their discretion.

Such a concept approaches Government regulation of broadcasting from the wrong end. Since broadcasters are not instrumentalities or agents of the Government, but operate as private parties under Government regulation, determination of whether there has been governmental action in any particular case turns on whether the Government in fact was in some way involved in bringing about the alleged violation, either by requiring or urging the broadcaster to commit the challenged action or by impressing it with Government imprimatur once it has been taken. It is illogical to say that when a private person acts in a manner left to his discretion he does so as a private person, but when that same private person acts in a way directly contrary to that required by law he does so as an agent of the Government. Once it is determined that a broadcaster acts as a private person subject to Government regulations, his actions cannot be imputed to the Government unless they are in some way approved or sanctioned by the Government.

*Right of Access*

■ Even if defendant's action in this case could be considered governmental action for First Amendment purposes, there is serious doubt that the plaintiff has a First Amendment right of access to defendant's broadcast facilities on which to base a damage claim.

In *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973), the Supreme Court failed to find a First Amendment right under which the plaintiffs could require a broadcaster to accept editorial advertisements. The earlier decision approving the Fairness Doctrine imposed by the Federal Communications Commission on broadcasters would necessarily negate a First Amendment right of access in individuals that would contravene that doctrine. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

Furthermore, a decision that a broadcaster may be constitutionally prohibited by statute from removing defamatory statements contained in speeches broadcast by legally qualified candidates for public office does not demonstrate any First Amendment right of a candidate to access. *In re Farmers Educational & Cooperative Union v. WDAY, Inc.*, 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407 (1959).

Although in a different context and involving a different set of values, the Supreme Court's decision in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), necessari-

ly denied that there is any First Amendment right of access to the print media.

No specific argument was made to this Court concerning this point, nor do we undertake here a detailed analysis. It is sufficient for this appeal to merely state that plaintiff, who must show error in the judgment, has not carried the burden of demonstrating to this Court a constitutional right of access to the defendant's broadcasting facilities that would be necessary to undergird a damage claim for constitutional violation in the denial of that access.

*Conclusion*

To summarize, we hold, *first*, that plaintiff has no implied cause of action for damages under the Communications Act for a broadcaster's violation of section 315(a), and *second*, that the action of the broadcaster in denying plaintiff airtime was not governmental action open to challenge under the First Amendment. Additionally, we surmise that even if governmental action were present, a candidate has no right of access to the broadcast media beyond that ordained by Congress, and thus no First Amendment right of access. The judgment of the district court dismissing plaintiff's complaint is therefore

AFFIRMED.